STATE OF CONNECTICUT *v.* GREGORY WYNTER
(6605)

SPALLONE, O'CONNELL and FOTI, Js.

Argued March 14—decision released September 12, 1989

*Kent Drager,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the

crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The defendant claims that the trial court erred (1) in allowing into evidence the defendant's statements to the police made while he was in the hospital, (2) in excluding certain testimony by the defendant and his doctor, (3) in failing to allow the defendant to rehabilitate a critical defense witness, (4) in instructing the jury on the alternative forms of the essential element of serious physical injury, (5) in permitting acts of prosecutorial misconduct, and (6) in failing to instruct the jury on assault in the second degree as a lesser included offense. We find no error.

From the evidence adduced at trial, the jury could reasonably have found the following facts. Early in the morning of April 10, 1983, the defendant became involved in an altercation with another customer in front of the Fox Trap Cafe in Hartford. When the bouncer, victim Earnest Dailey, asked the two to move away from the front of the nightclub, the defendant displayed a knife and threatened the victim. Stating that he would return, the defendant went home, changed his clothes and returned to the cafe with his brother, Neil Wynter. At the entrance to the cafe, the defendant was told by the doorman, Leroy Swain, that the manager did

---

[1] "[General Statutes] § 53a-59. ASSAULT IN THE FIRST DEGREE: CLASS B FELONY.

"(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person.

"(b) Assault in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

not want him inside. Disregarding the admonishment, the defendant ran past Swain into the cafe, carrying the same knife that he had earlier displayed. The victim, warned that the defendant was coming after him, turned to run. The defendant followed the victim and, upon reaching him, stabbed him in the back. The defendant, still holding the knife, retreated and then again attempted to reach the victim. At that moment, the defendant was shot in the back of the leg by an unknown assailant and was attempting to crawl from the cafe when the police arrived. The defendant was subsequently convicted by a jury of assault in the first degree. This appeal ensued.

The defendant's first claim of error is that the trial court failed to suppress certain statements he made to the police while he was in the hospital. The defendant argues that, while under the influence of medication, he was incapable of making a voluntary statement to the police and incapable of making a voluntary and knowing waiver of his *Miranda* rights. In response to the defendant's written motion to suppress all statements he made to police officers in the hospital, the trial court conducted a hearing and expressly found that the "medication administered to the defendant did not render him incapable of making a determination as to his willingness to relate to the officers certain facts concerning the incident, and that they were, in fact, made voluntarily and in accordance with the constitution." We find no error in the trial court's denial of the motion to suppress.

The following facts are relevant. Detectives James Malcolm and Paul Vanderheiden of the Hartford police department testified at the hearing that at approximately 6 p.m. on the evening of April 10, 1983, they had gone to the hospital to interview the defendant. After a conversation with the defendant's duty nurse, the officers entered the defendant's room. Malcolm

advised the defendant that the police had applied for a warrant for his arrest. The defendant, after being advised of his constitutional rights, stated that he understood. He chose not to remain silent, and he did not request the presence of an attorney.

Whether the statements were voluntarily made by the defendant to the police and were therefore admissible is a question of fact to be determined by the trial court in the exercise of its discretion. *State* v. *DeAngelis,* 200 Conn. 224, 232, 511 A.2d 310 (1986). On appeal, our "deference to the trial court's finding on questions of this nature is qualified by the necessity for an independent examination of the entire record to determine whether the trial court's finding of voluntariness is supported by substantial evidence." Id.

At the suppression hearing, it was the state's burden to prove by a preponderance of the evidence that the statements were voluntarily made. *State* v. *Toste,* 198 Conn. 573, 583–84, 504 A.2d 1036 (1986). "The test of voluntariness is whether an examination of all the circumstances shows that the conduct of police was such as to overbear the defendant's will to resist and bring about a confession, not freely self-determined." *State* v. *DeForge,* 194 Conn. 392, 397–98, 480 A.2d 547 (1984). "The factual inquiry into voluntariness focuses primarily on the conduct of law enforcement officials." *State* v. *Russo,* 3 Conn. App. 137, 145, 485 A.2d 1335 (1985). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado* v. *Connelly,* 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). " ' "The use of drugs or the ingestion of alcoholic beverages does not in and of itself render a subsequent admission inadmissible." . . . It is one factor to be considered in determining the voluntariness of a statement.' " *State* v. *Russo,* supra, 146, quoting *State* v.

*Stankowski,* 184 Conn. 121, 134, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981).

An examination of the record reveals no evidence of coercive police activity. The detectives made no threats or promises to the defendant, nor did they raise their voices. Moreover, the evidence supports a conclusion that the defendant was capable of deciding to volunteer statements to the police. The detectives testified that during the ten minute conversation, the defendant did not appear to be in pain. There was no slurring of his speech. He was alert, manifesting no drowsiness, his breathing was normal and the pupils of his eyes were normal. The defendant was rational, showed no confusion, and appeared to understand the detectives' questions.

James O'Brien, a physician with a Ph.D. in pharmacy, testified that there was a good probability that the effect of the medication given the defendant at 3:15 p.m. would have been minimal by 6 p.m., the time the statements were made.

The defendant's physician, Seymour Liebowitz, opined that the defendant's statements were not wholly competent because of the doses of medication he had received. Liebowitz admitted, however, that he did not see the defendant after noon on April 10, 1983, and did not actually know what the defendant's condition was at 6 p.m. on that date. Liebowitz also testified that, had the defendant been under the influence of the prescribed medication, he would have displayed some of the following characteristics: slurred speech; drowsiness; diminished respiration; pupils somewhat dilated; dark eyes; and a limited attention span. None of these side effects was apparent to the interviewing detectives.

From our independent examination of the record, we cannot say that the trial court's conclusion that the defendant's statements were voluntarily made and, therefore, admissible was clearly erroneous. See Practice Book § 4061.

The defendant also claims that his hospital statements should have been suppressed because, while acting under the influence of medication, he did not knowingly and voluntarily waive his *Miranda* rights. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). A waiver of *Miranda* rights may be inferred from the actions or words of the person interrogated. *State* v. *Wilson,* 183 Conn. 280, 284, 439 A.2d 330 (1981). The state bears the burden of demonstrating that the defendant understood his rights and that the defendant's course of conduct indicated that he did in fact waive those rights. Id., 284–85.

Evidence elicited at the suppression hearing amply supports a finding by the trial court that the defendant understood and voluntarily waived his *Miranda* rights. The defendant indicated to the police that he understood the *Miranda* warnings. At no time did he indicate that he did not wish to speak to the detectives, and he did not ask for an attorney to be present. The defendant appeared to be alert and responded to the police questions in detail. Accordingly, the trial court properly admitted his statements at trial. See *State* v. *Kuskowski,* 200 Conn. 82, 88–89, 510 A.2d 172 (1986); *State* v. *Aversa,* 197 Conn. 685, 696, 501 A.2d 370 (1985); *State* v. *Frazier,* 185 Conn. 211, 226, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); *State* v. *Wilson,* supra.

In his second claim, the defendant argues that the trial court erred in excluding certain evidence concerning the voluntariness of his hospital statement. The court did not permit the defendant to testify as to

whether he was capable of answering the detectives' questions. Liebowitz was not permitted to give his opinion as to the defendant's competence under the administered medication to make a weighty decision such as signing a surgical consent form.

The court ruled that the defendant could not testify as to his conclusion regarding whether he was able to make a decision or answer questions in light of his physical and mental condition. "A court has wide latitude in deciding whether to exclude the opinions and conclusions of witnesses." *Yeske* v. *Avon Old Farms School, Inc.,* 1 Conn. App. 195, 205, 470 A.2d 705 (1984). The decision whether to admit such opinions and conclusions is within the trial court's discretion and will not be disturbed unless such discretion is abused. *Turbert* v. *Mather Motors, Inc.,* 165 Conn. 422, 434, 334 A.2d 903 (1973). It is a general rule that witnesses testify to facts, not to their individual conclusions. *Robinson* v. *Faulkner,* 163 Conn. 365, 371–72, 306 A.2d 857 (1972).

The defendant was permitted to describe his mental and physical condition at the time he gave his statements to the police. He testified that he was tired and in pain and that he could not think properly. He remembered being thirsty, but stated that his hearing and sight had not been affected by his medication. The trial court ruled, however, that he could not state that he was incapable of answering the police questions. That is a conclusion as to the issue at trial of whether the defendant was competent to volunteer statements and voluntarily and knowingly to waive his *Miranda* rights. The trial court properly exercised its discretion in excluding the defendant's conclusion on an issue that was properly one for the jury to draw. *State* v. *Delgado,* 178 Conn. 448, 449, 423 A.2d 106 (1979).

The trial court also sustained the state's objection to the relevancy of the defense's question to Liebowitz as to whether the defendant, while under the influence of medication, would have been permitted to sign a surgical consent form.

The defendant contends that the jury could reasonably have inferred from that testimony that, if the defendant was too medicated to be competent to consent to surgery, he was too medicated to decide whether to volunteer statements to the police or knowingly waive his rights.

The defendant has a right to present expert opinion as to his mental and physical condition. *State* v. *Vaughn,* 171 Conn. 454, 458–63, 370 A.2d 1002 (1976). As with all evidence, the trial court must rule on the admissibility of such evidence, deciding if it is relevant and more probative than prejudicial. *State* v. *Carr,* 172 Conn. 458, 464, 374 A.2d 1107 (1977). The court may, in its broad discretion, exclude evidence if it determines that such evidence will tend to confuse the jury and obscure the issues. *State* v. *Aspinall,* 6 Conn. App. 546, 554, 506 A.2d 1063 (1986). The trial court's ruling on the admissibility of evidence will not be reversed unless there has been an abuse of discretion or an injustice done. *State* v. *Carr,* supra; *State* v. *Baskins,* 12 Conn. App. 313, 318, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).

In the present case, the defendant's competence to make decisions when the police questioned him at 6 p.m. was at issue. Liebowitz had not seen the defendant since noon. He, therefore, could not testify about the defendant's condition at the critical time. Nor was evidence offered to establish that there was a basis for comparison of the level of competence required to sign a surgical consent form and the level of competence required to volunteer statements or to waive *Miranda*

rights. The proffered testimony of Liebowitz would have tended only to confuse the jury and to obscure the issues. The trial court did not abuse its discretion in excluding this testimony.

Next, the defendant claims error in the trial court's ruling precluding him from pursuing collateral matters in an attempt to rehabilitate a defense witness. There is no merit to this claim.

Neil Wynter, the defendant's brother, was called as a defense witness. He testified on direct examination that on the night in question the defendant did not have a knife, did not fight with the victim and did not stab the victim. In attempting to impeach Neil's credibility, the state made the following offer of proof outside the presence of the jury. On the night the victim was stabbed, Neil Wynter was arrested and charged with throwing a brick through the window at the Fox Trap Cafe. At a court appearance, he applied for accelerated rehabilitation, and represented under oath to the court that he had never been granted accelerated rehabilitation on any prior occasion. Contrary to this statement, he had in fact previously been granted accelerated rehabilitation. He ultimately pleaded guilty to the misdemeanor of giving a false statement under oath.

The trial court permitted the state to impeach Neil Wynter's credibility by introducing evidence of this prior act of misconduct. On redirect examination, the defendant requested that the court give the jury a limiting instruction. The trial court complied and instructed the jury that the fact that Neil Wynter made an "incorrect" or "false statement" in another court proceeding was to be used solely to assist them in determining his credibility. The defense also tried to rehabilitate this witness by eliciting from him an explanation of the circumstances of the misconduct. The trial court sustained

the state's objection to the introduction of evidence on a collateral matter.

"[A] witness may be impeached by evidence of specific acts of misconduct which relate to veracity . . . ." *State* v. *McIntosh,* 12 Conn. App. 179, 183, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). When a witness' credibility is being attacked, the trial court enjoys liberal discretion in fixing the limits of cross-examination. *State* v. *Martin,* 201 Conn. 74, 85–86, 513 A.2d 116 (1986); *State* v. *Dolphin,* 195 Conn. 444, 459, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985). "The extent to which counteracting and rehabilitative evidence may be received after the credibility of a witness has been attacked is a matter in which the trial judge necessarily has broad discretion." *United States* v. *Perry,* 550 F.2d 524, 532 (9th Cir.), cert. denied, 434 U.S. 827, 98 S. Ct. 104, 54 L. Ed. 2d 85 (1977); *Beck* v. *United States,* 317 F.2d 865, 870 (5th Cir. 1963), cert. denied, 375 U.S. 972, 84 S. Ct. 480, 11 L. Ed. 2d 419 (1964).

The record reveals that the trial court was concerned that a further examination of the circumstances of Neil Wynter's prior misconduct would involve "getting into a lot of extraneous things that have no bearing on this jury's determination of the facts involving [the defendant]" and would lead the jury astray. The trial court did not abuse its discretion in limiting the scope of the defense's redirect examination of Neil Wynter.

The defendant's fourth and fifth claims of error on appeal were not properly preserved at trial. See Practice Book § 4185. As to each, the defendant seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). " 'Appellate review of newly discovered issues cannot be guaranteed by couching every claim of error in the constitutional language of *State* v. *Evans,* supra . . . .' " *State* v. *DeMayo,* 18 Conn. App. 297,

299, 557 A.2d 571 (1989). "Belated appellate scrutiny is warranted only for egregious errors that undermine the fairness of a trial and cast doubt on the integrity of the judicial process." *State* v. *Hull,* 210 Conn. 481, 484–85, 556 A.2d 154 (1989). We have reviewed the record in a limited way; see *State* v. *Thurman,* 10 Conn. App. 302, 305, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987); and conclude that the defendant has failed to state a claim, adequately supported by the record, that he has been denied a fundamental constitutional right or a fair trial. Id.

The defendant's fourth claim of error is that the trial court, in its instruction on assault in the first degree, erroneously presented the jury with alternative forms of the element "serious physical injury" for which there was insufficient evidence and also made possible a nonunanimous jury verdict. In its instructions to the jury on the elements of the crime of assault in the first degree, the court stated that the jury must find that the defendant intended to and did cause serious physical injury to the victim. The court gave the complete statutory definition of serious physical injury as "a physical injury which creates a substantial risk of death or which causes serious physical disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." General Statutes § 53a-3 (4). The defendant argues that this definition describes four separate and distinct ways to cause serious physical injury. He contends that there was insufficient evidence presented by the state to support all four methods, raising, therefore, the possibility that the jury did not unanimously find the defendant guilty beyond a reasonable doubt on an essential element of the crime charged.

It is true that it is error for the trial judge to instruct the jury on alternative methods of committing an

offense when there is insufficient evidence to support each. *State* v. *Hufford,* 205 Conn. 386, 399, 533 A.2d 866 (1987); *State* v. *Williams,* 202 Conn. 349, 363–64, 521 A.2d 150 (1987). Submitting unsupported alternative forms to the jury implicates the defendant's constitutional right to be convicted only upon proof beyond a reasonable doubt of all elements of the offense charged. *State* v. *Williams,* supra, 363.

This court recently held in *State* v. *Anderson,* 16 Conn. App. 346, 357, 547 A.2d 1368 (1988), however, that the forms of "serious physical injury" described in the definition are *not* statutory alternatives. The statutory definitions are not distinct, alternative methods of committing a crime. The jurors had only to determine unanimously whether the victim suffered a serious physical injury; they did not have to agree on which type of injury. Id.

In the present case, therefore, the trial court's general unanimity charge was sufficient to protect the defendant's right to a unanimous verdict. Because the defendant has not "clearly been deprived of a fundamental constitutional right"; *State* v. *Evans,* supra, 70; his fourth claim of error is not reviewable.

The defendant's second unpreserved claim is that, because of prosecutorial misconduct, he was deprived of his state and federal rights to due process of law and a fair trial. He claims that the prosecutor repeatedly forced the defendant on cross-examination to characterize the testimony of state's witnesses as lies and the witnesses as liars. The defendant also claims that the prosecutor indicated to the jury his personal belief in the defendant's guilt and his personal opinion of the credibility of the witnesses.

*Evans* review of alleged prosecutorial misconduct is reserved for those cases where the misconduct constituted a pattern so "blatantly egregious" that the

defendant is deprived of a fair trial. *State* v. *Williams,* 204 Conn. 523, 537, 529 A.2d 653 (1987); see also *State* v. *Hull,* supra, 485; *State* v. *DeMayo,* supra, 301. The defendant has not alleged a pattern of "blatantly egregious misconduct"; understandably so, because our examination of the transcript fails to reveal such a pattern. Under the circumstances in this case, the defendant's claim of prosecutorial misconduct is not subject to review.

Finally, the defendant contests the trial court's failure to charge the jury on assault in the second degree as a lesser included offense of assault in the first degree. There is no constitutional right to a jury instruction on a lesser included offense. *State* v. *Robinson,* 14 Conn. App. 40, 44, 539 A.2d 606, cert. denied, 488 U.S. 899, 109 S. Ct. 244, 102 L. Ed. 2d 233 (1988). Although the defendant filed a request to charge on this issue, he failed to comply with the rules of practice that require that he articulate the legal and factual basis for his request to charge. See Practice Book § 854; *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). "A request to charge is not appropriate within the meaning of *Whistnant* unless it complies with Practice Book § 854." *State* v. *Martin,* 15 Conn. App. 58, 64–65, 544 A.2d 231, aff'd, 211 Conn. 389, 559 A.2d 707 (1989).

In his request to charge, the defendant merely asked the court to instruct the jury that assault in the second degree was a lesser included offense of the crime charged. See *State* v. *Payne,* 14 Conn. App. 169, 171, 540 A.2d 87 (1988). When "[t]he defendant's request contains no facts or propositions of law upon which the court could justify giving the charge requested"; *State* v. *Robinson,* supra, 45; the trial court is justified in

denying the defendant's request to charge on a lesser included offense. *State* v. *Martin,* supra, 65; *State* v. *Payne,* supra, 171.

There is no error.

In this opinion the other judges concurred.