STATE OF CONNECTICUT *v.* JOSE A. FALCON
(9554)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued September 19—decision released December 17, 1991

*Susan Hawkins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Maxwell,* senior state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was charged in a two count information with the crimes of murder, in violation of General Statutes § 53a-54a,[1] and assault in the third degree, in violation of General Statutes § 53a-61 (a) (1). After a jury trial, the defendant was convicted on the first count of what the court considered a lesser included offense of murder, namely, manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a.[2] The jury also returned a verdict

---

[1] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-55a (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree with a firearm when he com-

of guilty on the second count. The defendant claims that the trial court improperly instructed the jury that it could consider the crime of manslaughter in the first degree with a firearm as a lesser included offense of the crime of murder, as to the meaning of proof beyond a reasonable doubt, and on circumstantial evidence by failing to define the state's and the defendant's respective burdens correctly. The defendant also claims that the trial court improperly hindered the defendant's self-defense claim by prohibiting the defendant from examining and rehabilitating his witnesses. We reverse the judgment in part, and remand the case to the trial court.

The jury could reasonably have found certain facts. On February 13, 1989, the defendant returned home from work in the afternoon. Early in the evening, his wife left to run some errands. At about 9 o'clock that evening, the defendant's wife telephoned him, and he testified that she "sounded a little drunk."

At about 11:30 that night, the defendant put on the jacket that he had worn to work that day and went out to look for his wife. He noticed her car parked outside a cafe, and when he entered the bar he saw his wife in the back room talking to three men. An argument ensued between the defendant and his wife because she refused to leave. Eventually, she agreed to leave with him and went to get her jacket and pocketbook.

As the defendant tried to leave the bar, the victim, who was an off duty bouncer at the bar, approached

mits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm."

General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person . . . ."

the defendant from behind to tell him to leave. The victim grabbed the defendant's shoulder and a struggle ensued. The defendant put his right hand into his jacket pocket, pulled out a gun, put it over his right shoulder and fired. The victim died from a single gunshot wound to his chest. The defendant left the bar, threw the gun into a river and then turned himself in to the police.

At trial, the defendant relied exclusively on a claim of self-defense. The defendant testified on his own behalf, stating that he carried the weapon because he and his family had been the victims of violence and continuing threats. He testified that he acted in self-defense when he reached for his gun at the time of the shooting because he believed his life was in danger, and that he did not intend to kill the victim.

I

The defendant's first claim is that the trial judge improperly instructed the jury that it could consider the crime of manslaughter in the first degree with a firearm, a violation of General Statutes § 53a-55a, as a lesser included offense of murder, a violation of General Statutes § 53a-54a. The information charged that the defendant, "with intent to cause the death of another person, caused the death of such person, in violation of section 53a-54a of the General Statutes." The defendant claims that, based on the charging document as worded, the instruction on manslaughter in the first degree with a firearm violated his statutory and constitutional rights to fair notice of the crimes charged against him. This claim was not properly preserved by the defendant at trial, but we conclude that we must notice such an instruction as plain error. Practice Book § 4185.

Both the state and the defendant requested a charge on the lesser included offense of manslaughter in the first degree. Neither requested a charge on manslaugh-

ter in the first degree with a firearm, which the court gave sua sponte. The defendant took no exception, however, to the charge as given.

" 'Although generally plain error review is limited to instances involving confidence in the fairness and integrity of the adjudicative process; *Smith* v. *Czercel,* 12 Conn. App. 558, 563, 533 A.2d 223 (1987); the doctrine essentially invokes the discretion of the court. *Finley* v. *Aetna Life & Casualty Co.,* [202 Conn. 190, 196, 520 A.2d 208 (1987)]. One standard for this appellate discretion is whether the issue is of importance to the development of the law of the state, is vital to the proper resolution of the case, and was sufficiently presented to the trial court initially . . . so that appellate consideration of it does not amount to ambuscade of the trial court. *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 402–403, 499 A.2d 64 (1985), rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987). It is this latter branch of the plain error doctrine which we invoke here.' *Daley* v. *Gaitor,* 16 Conn. App. 379, 383, 547 A.2d 1375 (1988)." *State* v. *Rogers,* 18 Conn. App. 104, 110–11, 556 A.2d 1030 (1989).

In this case, the necessary preconditions for a plain error review as outlined in *Rodgers* have been met. The question of whether one crime is a lesser included offense of another is important to the development of the law because of its due process overtones. The question is also vital to the proper resolution of the case. Finally, the question was sufficiently presented to the trial court initially. In fact, it was the state's attorney who indicated to the trial judge that the charge was incorrect. Therefore, our consideration of it now does not amount to ambuscade of the trial court.

"Nothing is more elementary in criminal law than that an accused is required to defend only against the charge[s] alleged." *State* v. *Belton,* 190 Conn. 496, 501,

461 A.2d 973 (1983). The information serves the very important function of informing the defendant of the nature and cause of the accusation as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I, § 8; *State* v. *Belton,* supra. Where one or more offenses are lesser than and included in the crime charged in the information, notice of the crime charged includes notice of all lesser included offenses. *State* v. *Castro,* 196 Conn. 421, 429, 493 A.2d 223 (1985).

There are tests comparing one crime with another to determine if one is a lesser included offense of the other or if the two are separate crimes. See *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980). "The test for determining whether one crime is a lesser included offense of another crime is whether it is possible to commit the greater offense in the manner described in the information or bill of particulars without having first committed the lesser." *State* v. *Hodge,* 201 Conn. 379, 385, 517 A.2d 621 (1986); *State* v. *Whistnant,* supra, 584. The lesser included offense doctrine implicates notice requirements of due process. *State* v. *Hudson,* 14 Conn. App. 472, 476–77, 541 A.2d 539 (1988).

On the other hand, "[u]nder the *Blockburger* test, 'a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other.' " *State* v. *Tweedy,* 219 Conn. 489, 495, 594 A.2d 906 (1991). The separate offense doctrine implicates double jeopardy concerns. Id.

In this case, we must determine whether it was possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. *State* v. *Hodge,*

supra. Proof of a lesser included offense must not require proof of any element that is not needed to commit the greater offense. *State* v. *Castro,* supra, 428; *State* v. *Gonzalez,* 14 Conn. App. 216, 221, 541 A.2d 115 (1988), aff'd, 210 Conn. 446, 556 A.2d 137 (1988).

The state conceded at oral argument that manslaughter in the first degree with a firearm, as defined in General Statutes § 53a-55a, is not a lesser included offense of murder, as defined in General Statutes § 53a-54a and as charged in the state's information in this case. We are not bound, however, by a concession of the parties. *State* v. *Putnoki,* 200 Conn. 208, 219 n.6, 510 A.2d 1329 (1986). This is particularly true in this case because there are at least five other cases in which it has been stated in passing, or decided inferentially, that the former is a lesser included offense of the latter. See, e.g., *State* v. *Shipman,* 195 Conn. 160, 486 A.2d 1130 (1985); *State* v. *Marino,* 190 Conn. 639, 462 A.2d 1021 (1983); *State* v. *Toczko,* 23 Conn. App. 502, 582 A.2d 769 (1990); *State* v. *Bahamonde,* 21 Conn. App. 801, 570 A.2d 245 (1990); *State* v. *Rodriguez,* 10 Conn. App. 357, 522 A.2d 1250 (1987).

For purposes of lesser included offense analysis, the facts in this case are critically distinguishable from the facts in *State* v. *Shipman,* supra, and *State* v. *Marino,* supra. In both *Shipman* and *Marino,* the defendant was charged with murder and the charging documents expressly stated that such crime was perpetrated by the use of a firearm. Since, for purposes of a lesser included offense analysis, both the relevant statutes and the charging documents must be examined; *State* v. *John,* 210 Conn. 652, 695, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); manslaughter in the first degree with a firearm was considered to be a lesser included offense in those cases. In the present case, the information contained no allegation of use of a firearm.

The crime of manslaughter in the first degree with a firearm requires proof of an additional element, use of a firearm, that is neither a necessary element of the crime of murder nor a necessary element of the crime as alleged in the information. Moreover, it is simply irrelevant that the evidence adduced at trial could have supported the additional element of use of a firearm. This court is to look at the statutes, the information and the bill of particulars, as opposed to the evidence presented at trial, in order to determine what constitutes a lesser included offense of the offense charged. *State* v. *John,* supra; *State* v. *Martin,* 187 Conn. 216, 222, 445 A.2d 585 (1982). The question, then, is not whether the defendant could have been charged with manslaughter in the first degree with a firearm, but whether, having been charged with murder without any specification in the information as to the use of a firearm, he could be convicted of the former crime. The answer in this case is that he cannot.

It is clear that the court's instruction on manslaughter in the first degree with a firearm should not have been given in this case because it is not a lesser included offense of murder. The giving of the instruction, however, does not impinge on the fundamental fairness of the defendant's trial. The conviction was clearly supported by the evidence, and the conduct of the trial is not otherwise objectionable in any way. We must next decide the consequences arising from our finding of plain error.

The trial court's instruction to the jury regarding manslaughter with a firearm included an explanation of all elements of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). The jury's finding of guilty of manslaughter in the first degree with a firearm necessarily indicates that the jury found, beyond a reasonable doubt, that the defendant was guilty of manslaughter under § 53a-55 (a) (1). It has

been held that manslaughter under § 53a-55 (a) (1) is a lesser included offense of murder. *State* v. *Maselli,* 182 Conn. 66, 71, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Rodriquez,* 180 Conn. 382, 407, 429 A.2d 919 (1980).

On numerous occasions, our Supreme Court and this court have modified judgments after a reversal, rather than remand for a new trial. See *State* v. *Carpenter,* 214 Conn. 77, 85, 570 A.2d 203 (1990); *State* v. *McGann,* 199 Conn. 163, 178–79, 506 A.2d 109 (1986); *State* v. *McNeil,* 21 Conn. App. 519, 524, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990); *State* v. *Aleksiewicz,* 20 Conn. App. 643, 651, 569 A.2d 567 (1990); *State* v. *Horne,* 19 Conn. App. 111, 142–46, 562 A.2d 43 (1989).[3] In these cases, the courts have rendered judgments for crimes that were necessarily included in the jury's determination. See, e.g., *State* v. *Carpenter,* supra (although insufficient evidence to support jury verdict of murder because of lack of proof of specific intent, proper for court to modify judgment to reflect conviction of manslaughter in the first degree).

In *State* v. *McNeil,* supra, the defendant was convicted of possession with intent to sell a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and we concluded that the defendant's conviction under that section was not justified. Since the erroneous instruction implicated only the jury's finding that the defendant

---

[3] This is not a situation similar to that found in *State* v. *Chicano,* 216 Conn. 699, 725, 584 A.2d 425 (1990), cert. denied, ___ U.S. ___, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). In *Chicano* the court was faced with the question of the proper procedural form of remand after the defendant successfully appealed multiple convictions on double jeopardy grounds. Here, in contrast, we are dealing with the proper procedural form of remand in a case where no double jeopardy concerns are implicated.

was not drug-dependent, and, because the state produced sufficient evidence to prove all the elements of a violation of § 21a-277 (a), we remanded the case with direction to modify the judgment so as to reflect a conviction of a violation of § 21a-277 (a). Similarly, in the present case, the trial court improperly instructed the jury to consider the crime of manslaughter in the first degree with a firearm. The erroneous instruction, however, implicated the jury's finding only as to use of a firearm, and the state has produced sufficient evidence to prove all of the elements of a violation of manslaughter in the first degree under § 53a-55 (a) (1). Therefore, rather than reverse the judgment and remand the case for a new trial, we reverse the judgment and remand the case to the trial court with direction to render a judgment of conviction of manslaughter in the first degree in violation of § 53a-55 (a) (1), and to resentence the defendant in accordance with that conviction.

## II

The defendant's second claim is that the trial court improperly instructed the jury on the meaning of reasonable doubt. He claims that the state's burden of proof was diluted in violation of the defendant's constitutional rights to a fair trial before a properly instructed jury and to be convicted only by proof beyond a reasonable doubt. Although this claim was not properly raised in the trial court, the defendant requests review by this court under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

"It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction. . . . An instruction that dilutes the state's burden, or places a burden on the defendant to prove his innocence, is unconstitutional." (Citation omitted.) *State* v. *Reddick,*

197 Conn. 115, 131–32, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). We analyze the defendant's claim to see if he can prevail in demonstrating that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. *State* v. *Golding,* supra, 240.

"In reviewing a constitutionally based challenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. *State* v. *Snook,* 210 Conn. 244, 275–76, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Bailey,* 209 Conn. 332, 338, 551 A.2d 1206 (1988)." *State* v. *Ober,* 24 Conn. App. 347, 358, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134 (1991). The charge is not to be judged in artificial isolation from the overall charge. *State* v. *Kelly,* 23 Conn. App. 160, 164, 580 A.2d 520 (1990), cert. denied, 216 Conn. 831, 583 A.2d 130, cert. denied,      U.S.     , 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991).

The defendant first challenges that portion of the instructions that reads: "On the other hand, if all the other evidence has been impartially reviewed by you and introduces in your mind a settling belief that you would be able to act upon matters of the highest importance relating to your own affairs, then in that event you would be free from doubt and you would find the defendant guilty." He claims that the "settling belief" language reduces the state's burden of proof to a "clear and convincing evidence" standard. This court, however, recently held that similar, isolated language ("settled and abided belief") did not create a clear constitutional violation for purposes of *Golding* review. *State* v. *Ober,* supra. This definition was given but a single time in the course of the instructions, and the trial court also

defined reasonable doubt on numerous other occasions with standard, long accepted definitions. For example, the jury also was instructed that "[a] reasonable doubt is a doubt for which a valid reason can be assigned." It was instructed that "[r]easonable doubt is the kind of doubt upon which reasonable persons like yourselves in the more serious and important affairs of your own lives would hesitate to act." The jury was also instructed that reasonable doubt "is a doubt which is something more than a guess, speculation or surmise. It is not a conjecture or a fanciful doubt." All such definitions have been approved in this state. See *State* v. *Thomas,* 214 Conn. 118, 119, 570 A.2d 1123 (1990); *State* v. *Gilchrist,* 24 Conn. App. 624, 640, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 13 (1991); *State* v. *Theriault,* 24 Conn. App. 502, 509, 589 A.2d 379, cert. denied, 219 Conn. 909, 593 A.2d 135 (1991); *State* v. *Turner,* 24 Conn. App. 264, 275, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991).

In this case, viewing the charge as a whole, as we must, we conclude that the defendant cannot prevail on this claim of constitutional error.

The defendant also challenges that portion of the jury instructions that told the jurors that they would be free from reasonable doubt if the evidence introduced in their minds a settling belief that they would be "willing to act upon in matters of the highest importance relating to their own affairs." The defendant claims that this too diluted the state's burden of proof. Although our Supreme Court has disapproved of the "willingness to act" language, it has held that it "does not constitute reversible error, let alone constitutional error in an otherwise adequate charge upon reasonable doubt." *State* v. *Smith,* 210 Conn. 132, 150, 554 A.2d 713 (1989). Furthermore, immediately preceding the language now under attack the jury was instructed by

the expressly approved charge that a reasonable doubt is one that would cause persons "to hesitate to act." See id.

The defendant further argues that the trial court's instructions relating a reasonable doubt to the jurors' own affairs "trivialized" the state's burden of proof. The defendant's own request to charge, however, contained identical language. "Ordinarily, action induced by an appellant cannot be a ground for error. *State* v. *Scognamiglio,* 202 Conn. 18, 25, 519 A.2d 607 (1987)." *State* v. *Turner,* supra, 272. Moreover, it is by now well established that there is nothing unconstitutional about such a charge. *State* v. *Thomas,* supra, 120; *State* v. *Theriault,* supra, 508–509; *State* v. *Lamme,* 19 Conn. App. 594, 607–608, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). " '[W]here no constitutional rights are violated, when an accused requests in writing that an issue be submitted to the jury, he cannot, on appeal, claim error in its submission.' . . ." (Citation omitted.) *State* v. *Turner,* supra, 272.

Another of the defendant's challenges is to that part of the jury instructions that stated a reasonable doubt had to be one for which the jurors could assign a reason. As even the defendant concedes, similar claims have been soundly rejected in this state. See *State* v. *Thomas,* supra; *State* v. *Findlay,* 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Leecan,* 198 Conn. 517, 538, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Theriault,* supra; *State* v. *Dennison,* 24 Conn. App. 27, 34, 585 A.2d 1240, cert. granted, 219 Conn. 901, 593 A.2d 131 (1991). No further discussion, therefore, is warranted with respect to this claim.

The defendant also challenges the trial court's two inference instruction. He claims that it diluted the

state's burden of proof, as well as undermined the presumption of innocence. The defendant relies on federal analyses of such an instruction as found in *United States v. Khan,* 821 F.2d 90, 93 (2d Cir. 1987), and *United States v. Attanasio,* 870 F.2d 809, 818 (2d Cir. 1989), which prohibit the use of such an instruction.

A two inference instruction is one that tells the jury that if all, or part, of the evidence is capable of two reasonable interpretations, one of which is consistent with innocence and the other is consistent with guilt, then the jury must adopt the inference that is consistent with innocence.[4] In *State v. Dyson,* 217 Conn. 498, 504, 586 A.2d 610 (1991), our Supreme Court held that such an instruction served to benefit the defendant, and did not diminish the state's burden where the charge as a whole correctly charged the jury regarding the state's burden of proof. The court noted that "such an instruction that principally serves to benefit the defendant is proper under our case law." Id.; see also *State v. Smith,* 219 Conn. 160, 166, 592 A.2d 382 (1991). In fact, this court has previously held that such an instruction, when given in relation to a single piece of circumstantial evidence, which is susceptible of the two inferences, is too favorable to the defendant, and the jury should not be given the instruction. *State v. Dumlao,* 3 Conn. App. 607, 618–19, 491 A.2d 404 (1985). We conclude that the two inference instruction given in this case did not undermine the presumption of innocence or dilute the state's burden of proof.

[4] *United States v. Kahn,* 821 F.2d 90, 93 (2d Cir. 1987), and *United States v. Attanasio,* 870 F.2d 809, 818 (2d Cir. 1989), the Second Circuit Court of Appeals disapproved use of the "two inference" instruction because it suggests that a preponderance of the evidence standard is relevant when it is not. In both cases, however, the court concluded that use of the instruction did not require reversal of the defendant's conviction. *State v. Dyson,* 217 Conn. 498, 504, 586 A.2d 610 (1991), decided after *Kahn* and *Attanasio,* considered the propriety of use of the same instruction and concluded that the state's burden of proof was not diluted.

## III

The defendant's third claim is that the trial court improperly charged the jury on the use of circumstantial evidence. With respect to circumstantial evidence, the trial court instructed the jurors that they "must be satisfied that the basic facts from which you are asked to draw the inference have been proved beyond a reasonable doubt. If and only if you find the basic facts have been proven beyond a reasonable doubt may you go on to consider whether you should make the inference or draw the inference." The defendant claims that this instruction failed to differentiate between evidence produced by the state and evidence produced by the defendant, and that the defendant too could rely on circumstantial evidence. The defendant argues, therefore, that the trial court improperly imposed on the defendant a "beyond reasonable doubt" burden of proof with respect to proof by circumstantial evidence. "Although the defendant failed to request a charge on this issue or to object to the charge as given . . . such a claim is reviewable under [*Evans* and *Golding* ]." *State* v. *Mercer,* 208 Conn. 52, 72, 554 A.2d 611 (1988).

Initially, it must be determined whether we should inspect the court's circumstantial evidence instruction in isolation from the remainder of the charge. The defendant argues that the principal issue in this case was intent, and that therefore this method of analysis is appropriate. "Such exacting scrutiny is reserved [however] for cases presenting these factors in combination with an improper suggestion to the jury that the state's burden of proof is something less than the 'beyond a reasonable doubt' standard." *State* v. *Ortiz,* 217 Conn. 648, 666, 588 A.2d 127 (1991); see, e.g., *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598

(1986); *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985); *State* v. *Dunn,* 26 Conn. App. 114, 598 A.2d 658 (1991). Conversely, if the jury was properly instructed that the state had to prove all essential elements of the crime charged beyond a reasonable doubt, then we will not deviate from traditional analysis of challenges to jury instructions. *State* v. *Ortiz,* supra. In such a case, we will examine the trial court's circumstantial evidence instruction in the context of the charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. *State* v. *Ortiz,* supra; *State* v. *Mercer,* 200 Conn. 52, 73, 544 A.2d 611 (1988).

In *Ortiz,* the court was faced with a similar instruction and challenge to it in the context of an intoxication defense. In rejecting the defendant's claim, the court noted that "the court separately and comprehensively instructed the jury on the role of intoxication in the case, at no time suggesting that the defendant's circumstantial evidence of his intoxication should be ignored unless it satisfied the 'beyond reasonable doubt' standard distinctly set forth as applicable to the state." Id., 667–68. The court concluded that the jury could not have been misled to apply the reasonable doubt standard to the defendant's circumstantial evidence of his intoxication. Id. The court further concluded that if a separate instruction had been given, namely, that the defendant could rely on circumstantial evidence to establish his defense, that instruction itself could confuse and mislead the jury. Id.

Although the defendant here presented a defense of self-defense, and not intoxication, the analysis required is the same as in *Ortiz.* The trial court separately and comprehensively instructed the jury on the role of the defendant's self-defense claim in this case. At no time did the court suggest that the defendant's circumstantial evidence of his self-defense should be ignored unless it satisfied the "beyond reasonable doubt" standard dis-

tinctly set forth as applicable to the state. Cf. *State* v. *Dunn*, supra. Therefore, we conclude that the instruction on circumstantial evidence, as given, was sufficient, and that it is not reasonably possible that the jury was misled.

## IV

The defendant's final claim is that the trial court impermissibly restricted the presentation of his defense by prohibiting him from questioning defense witnesses as to whether they were aware of the defendant's reasons for carrying a gun, and by prohibiting him from rehabilitating the witnesses on this point after the state's cross-examination. Additional facts must first be set forth in order to address this claim adequately.

The defendant relied exclusively on the defense of self-defense. In support of this defense, the defendant sought to introduce evidence regarding his reasons for carrying an unlicensed firearm outside his home. According to the defendant's testimony at trial, in 1981 he and his wife were assaulted in their backyard. The defendant further testified that the assailants continually threatened the defendant and his family, and, fearing for their safety, the defendant purchased the gun in question. He failed to obtain a license for it because he claimed that the application was too complicated for him to fill out.

Another incident that the defendant sought to present to the jury in support of his self-defense claim occurred in 1986. On this occasion, the defendant's daughter and her friend were assaulted about a block away from the defendant's home. Both of the girls' jackets were stolen during the incident. The defendant called the friend to the stand to describe this incident and to describe the defendant's reaction to it. She also testified as a character witness for the defendant.

The defendant took the stand and testified concerning his reason for carrying the gun, specifically relating the 1981 incident. He stated that on the night in question he had not specifically armed himself for a confrontation, but rather he simply had the gun in his jacket pocket, as was his custom. He further testified that he used the gun against the victim only after the victim had grabbed him and had choked him, at which time the defendant had feared for his life.

In further support of his defense, the defendant also presented several character witnesses, each of whom testified concerning his or her opinion of the defendant, as well as his reputation in the community for being a truthful and nonviolent person. The defendant unsuccessfully sought to question the witnesses as to whether they were aware of the defendant's reason for carrying a gun. The defendant also sought, without success, to question on direct examination his daughter's friend concerning the 1986 incident.

Although the trial court permitted the defendant himself to testify concerning the 1981 incident and its relation to his carrying a gun, the trial court prohibited the defendant from questioning his character witnesses on this point on direct examination. The defendant argued that such testimony was relevant, critical to his defense, and came under the state of mind exception to the hearsay rule. The trial court ruled, however, that each witness lacked personal knowledge of the incident, would testify based on impermissible hearsay, and that the incident was of little relevance to the self-defense claim itself because of the remoteness in time.

On cross-examination of the character witnesses, the state attempted to impeach each witness by asking whether, in his or her opinion, a peaceful, nonviolent person would carry a gun. Two of the witnesses responded affirmatively, and two responded negatively.

The state did not give any of them an opportunity to explain their answers. The defendant then sought to rehabilitate each witness on redirect examination by asking whether he or she was aware of the defendant's reasons for carrying a gun. The trial court again prohibited such questioning despite the defendant's argument that the state, on cross-examination, had "opened the door" to this line of questioning. The defendant properly preserved his claim.

" '[N]o precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to reason and judicial experience.' " *State* v. *Delgado,* 8 Conn. App. 273, 281, 513 A.2d 701 (1986); *State* v. *Aspinall,* 6 Conn. App. 546, 554, 506 A.2d 1063 (1986). "In each case, we recognize that it is the trial court which is in the best position to view the evidence in the context of the case as a whole, and its rulings on the admissibility of evidence are given great deference." *State* v. *Delgado,* supra. " 'On appeal, we are limited in our review to a determination of whether, under the circumstances of the case, in exercising its broad discretion, the trial court could legally act as it did, and not whether we, under the same circumstances, would make the same ruling.' " *State* v. *Delgado,* supra; *State* v. *Aspinall,* supra. "The trial court's ruling on the admissibility of evidence will not be reversed unless there has been an abuse of discretion or an injustice done." *State* v. *Wynter,* 19 Conn. App. 654, 662, 564 A.2d 296, cert. denied, 213 Conn. 802, 567 A.2d 834 (1989).

The incidents in this case were remote in time from the actual shooting in question. Both prior incidents in no way involved the victim. They shed little, if any, light on the defendant's state of mind at the time he fired his gun into the victim's chest. Moreover, the jury did hear from the defendant his reasons for carrying

the weapon. And finally, only two of the four character witnesses responded negatively to the state's question on cross-examination.

Although "[o]ut of court statements to a person are admissible to show [the defendant's] state of mind where his mental state is relevant"; *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988); " ' "[i]t is a reasonable exercise of judicial discretion to exclude questions which would introduce issues foreign to the case; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490 [1952]; or evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473 [1964]." *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 (1969).' " *State* v. *Ruffin,* 206 Conn. 678, 683–84, 539 A.2d 144 (1988). The trial court did not abuse its discretion.

The judgment of conviction of manslaughter with a firearm in violation of General Statutes § 53a-55a is reversed and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge, and to render a judgment of conviction of manslaughter in violation of General Statutes § 53a-55 (a) (1), and to resentence the defendant in accordance with that conviction. The judgment of conviction of assault in the third degree is affirmed.

In this opinion the other judges concurred.