STATE OF CONNECTICUT *v.* MITCHEL E. VAUGHN

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued May 5—decision released August 24, 1976

*Robert M. Axelrod,* with whom, on the brief, was *Joseph E. Fallon,* for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

HOUSE, C. J. The defendant was found guilty by a jury of the crimes of rape, deviate sexual intercourse, burglary and larceny. The fact that these crimes were committed as testified to by the victim is not contested by the defendant, but at the trial and on this appeal he has consistently denied that he was the perpetrator and at the trial he also offered evidence to support his alibi claim. Certain facts are of particular relevance in our consideration of the merits of the appeal: (a) The victim, a sixteen-year-old girl, was not able at any time to identify her assailant; (b) the only evidence linking the defendant to the crimes was a confession which the defendant gave to the investigating police and three items, neutral in themselves, found in the home of the defendant—a flashlight, a small pocketknife and fourteen dollars in currency; and (c) prior to trial, upon representation by the state pursuant to the provisions of § 54-40 of the General Statutes that it appeared that the defendant was so insane or mentally defective that he was unable to understand the proceedings against him, or to assist in his defense, the defendant was examined by two psychiatrists. While the record does not contain the psychiatrists' reports, it does indicate that the state's attorney informed the trial court that the defendant "had a 54-40 and he passed."

Before the trial, the court heard and denied a motion by the defendant to suppress (1) the testimony of Detective William J. Mahon of the North Haven police department who questioned the defendant and obtained a confession from him, (2) the confession, and (3) the three items found in the defendant's home.

After the state had rested its case, the defendant sought to open his defense by offering the testimony

of a psychologist as to the weight and credibility to be accorded to the defendant's confession. After considering the defendant's offer of proof as to that testimony, the court sustained the state's objection to the testimony of the psychologist and excluded it from consideration by the jury. Those rulings and the court's finding of certain facts relative to those rulings are the bases of the assignments of error claimed and briefed by the defendant. We conclude that a decision on the merits of the error assigned to the exclusion of the testimony of the psychologist is dispositive of the merits of this appeal.

The court properly made a finding as a result of its hearings in the absence of the jury relative to the motion to suppress and to the defendant's offer of proof concerning the excluded testimony of the psychologist. As we have noted, the victim of the crimes was unable to identify the perpetrator. The finding discloses that the only evidence which directly linked the defendant to the crimes charged was his confession which was obtained by Detective Mahon. In the course of investigating the victim's report of the crimes, Detective Mahon went to the home of the defendant as a result of his knowledge of a previous investigation and arrest of the defendant for a similar offense the previous year. He was met outside the house by the defendant's father who brought out the defendant and told him to go with the officer for a police interview. At that time, the defendant was not an accused and went voluntarily with the officer for questioning. He was advised of his constitutional rights. Detective Mahon first inquired about various "Peeping Tom" incidents in the area of Larson Drive in North Haven and the defendant informed him that he was

responsible for them. They then left the police station and, with the defendant directing the way, went to Larson Drive where the defendant pointed out houses where he said he had peeped in the windows. While driving in the area, the officer pointed to the home of the victim and asked: "How about the pink house?" After proceeding further down the street, the officer stopped the car and continued to question the defendant. After about ten or fifteen minutes, at about noon, they returned to the police station, where the defendant was again informed of his constitutional rights and told that he could leave if he so desired, but he remained to answer questions posed mainly by Detective Mahon. The questioning continued for some time and the defendant, about 3:25 p.m., gave a signed statement admitting the attack on the victim. The statement contained a reference to a flashlight, a knife and some currency. The defendant was then taken back to his home where he and his father both signed a form consenting to a search of the house. During the search, the defendant turned over to Detective Mahon a flashlight, a small black-handled pocketknife, and a brown envelope containing some currency. After those three items were taken, the defendant was arrested and advised of the charges against him. During the trial, the articles and the defendant's written confession were admitted as exhibits over the objection of the defendant. Detective Mahon testified that the confession was obtained in the following manner: He would ask the defendant to relate the circumstances of the night in question, then repeat what he was told, paraphrasing what had been said, and ask the defendant if that was correct and then type the agreed-upon phrasing.

The findings further reveal that at the trial the defendant testified that he never understood the meaning and contents of the statement that he signed for Detective Mahon and that he signed the consent to search form because he was scared. He also produced alibi witnesses who testified that the defendant was with them during the time the offenses were committed.

After the hearing on the motion to suppress the confession and the articles taken from the defendant's home, the court denied the motion, finding that the defendant had been duly warned of his constitutional rights, that the questioning of the defendant was not an "in-custody" interrogation, and that the confession was given and the articles turned over to the police freely and voluntarily.

Relative to his assignment of error addressed to the court's exclusion of the offered testimony of the psychologist concerning the confession, the defendant, in argument to the trial court, recognized the finality of the court's ruling that the confession had been admitted as an exhibit for the consideration of the jury and that that ruling was not subject to further contest in the proceedings. He made no further claims in that regard but claimed that the testimony of the psychologist was admissible as that of an expert as to the defendant's intellectual abilities to understand what he did and as to his ability to understand the document that he signed. The evidence was offered not on the question of the admissibility of the confession but, it having been admitted as an exhibit, to assist the jury in determining the weight and credibility to be given to the confession as admitted—"to establish some knowledge of his emotional, intellectual and com-

prehension abilities. . . . And the further purpose of his testimony is to demonstrate that he could not have, and was not then, and is not now capable of understanding the words in the statement that he signed . . . . Further, it is my hope that the witness will testify with regard to his functioning under stress situations."

The precise question raised by this assignment of error—whether evidence as to the mental capacity of a confessor at the time of the giving of the confession is admissible to be weighed by the jury in determining what weight and credibility they will give to the confession which has been introduced in evidence—appears to be one of first impression in this jurisdiction, but it has been raised and answered affirmatively in many others.

In *Lego* v. *Twomey*, 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618, the United States Supreme Court ruled that the question of voluntariness of a confession need not be submitted to the jury. It went on, however, to discuss (pp. 485–86) the function of the jury in the light of the earlier case of *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, which had held unconstitutional the New York procedure of submitting the voluntariness of a confession to the jury unless under no circumstances could the confession be deemed voluntary: "Nothing in *Jackson* questioned the province or capacity of juries to assess the truthfulness of confessions. Nothing in that opinion took from the jury any evidence relating to the accuracy or weight of confessions admitted into evidence. A defendant ha been as free since *Jackson* as he was befo familiarize a jury with circumstances tha the taking of his confession, including f

460

upon its weight and voluntariness. In like measure, of course, juries have been at liberty to disregard confessions that are insufficiently corroborated or otherwise deemed unworthy of belief."

In prosecutions for sex offenses, the importance of aids to the evaluation of credibility has long been recognized. "It is a familiar point to courts and legal scholars that sex cases create a special need for an evaluation of credibility. The accusation is 'easily to be made and harder to be defended,' the penalties are high, and often the charge incites sympathy for the prosecutrix and prejudice against the defendant. Secondly, this type of litigation is especially likely to involve pathological witnesses." Juviler, "Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach," 48 Cal. L. Rev. 648, 674; see 3 Wigmore, Evidence (3d Ed.) §§ 924a–934a; McCormick, Evidence (2d Ed.) § 45, p. 93 et seq. Clearly, where the most damaging evidence of all, a confession, is virtually the entire evidence against a defendant charged with a serious crime, such as rape, the special need and the same considerations should apply in weighing the credibility and weight to be given to the confession. See Driver, "Confessions and the Social Psychology of Coercion," 82 Harv. L. Rev. 42, for a discussion of "the psychological mechanisms at work during questioning." We have also held under other circumstances where the credibility of a witness in a murder case was under attack that "there can be little doubt that psychiatric testimony is admissible to impeach credibility. *United States* v. *Hiss* . . . [88 F. Sup. 559, S.D. N.Y.]." *Taborsky* v. *State*, 142 Conn. 619, 629, A.2d 433.

the preliminary question of admissibility ion is for the court, the credibility and

weight to be accorded the confession is for the jury. *State* v. *Traub,* 150 Conn. 169, 187 A.2d 230, remanded for reconsideration on other grounds, 374 U.S. 493, 83 S. Ct. 1899, 10 L. Ed. 2d 1048, on remand, 151 Conn. 246, 196 A.2d 755, cert. denied, 377 U.S. 960, 84 S. Ct. 1637, 12 L. Ed. 2d 503; *State* v. *Darwin,* 155 Conn. 124, 230 A.2d 573, rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630, on remand, 156 Conn. 661, 243 A.2d 82, on appeal after remand, 161 Conn. 413, 288 A.2d 422. We agree that the "weight of a confession is for the jury to determine. The confession should be carefully scrutinized in the light of all the attendant circumstances" and may include a consideration of the physical and mental condition of the confessor as a factor. 3 Wharton, Criminal Evidence (13th Ed.) § 693, p. 495, § 686, p. 477. This is especially so in rape or related assault cases where the principal witnesses are the defendant and the complainant and a decision as to whether the defendant committed the crime is largely dependent on questions of credibility which are peculiarly for determination by the trier of fact. *State* v. *Rybczyk,* 133 Conn. 598, 599, 53 A.2d 295; *State* v. *Chuchelow,* 131 Conn. 82, 83, 37 A.2d 689.

Other courts, when faced with the similar circumstances of a serious crime, a confession as the basic if not sole evidence of guilt, and a defendant of questionable mental condition, have held that expert testimony is admissible to impeach the credibility of the confession. *State* v. *Faught,* 254 Iowa 1124, 120 N.W.2d 426 (evidence of mental weakness admissible to determine weight of confession); *People* v. *Joyce,* 233 N.Y. 61, 134 N.E. 836 (where a confession to murder was the only evidence and the defendant claimed the confession was the result of

a lack of comprehension, that he had the mind of a child, and was easily influenced); *Commonwealth v. Jones,* 459 Pa. 62, 327 A.2d 10 (confession to murder admitted but psychiatric evidence allowed as to probative value); *State v. Allen,* 67 Wash. 2d 238, 406 P.2d 950; see also *Vinzant v. State,* 28 Ala. App. 220, 180 So. 736; *People v. Boyington,* 3 Cal. App. 2d 655, 39 P.2d 867; *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109; *State v. Stewart,* 238 La. 1036, 117 So. 2d 583; *State v. Berberick,* 38 Mont. 423, 100 P. 209; 29 Am. Jur. 2d, Evidence, § 596; 23 C.J.S. 228, Criminal Law, § 828. In *Commonwealth v. Jones,* supra, 13, the Pennsylvania Supreme Court was also for the first time faced in the same context with the same question which is now before us and we are in agreement with its conclusion: "While the appellant in this case is not strictly challenging the voluntariness of his confession, he is trying, by his offer of proof, to have the confession viewed in the perspective of his alleged subnormal mental capacity, and so to question the weight that should be given to it. In effect, he is saying that the statement in the format presented by the Commonwealth was not truly his own. We see no reason why opinion testimony by a qualified psychiatrist that, because of his low intelligence, appellant was incapable of giving such a statement should not be admissible for that purpose, notwithstanding that he was not present when the confession was made and recorded."

We are not unmindful of the broad discretion which a trial court has in ruling on the relevancy of evidence and the exclusion of questions which would introduce issues collateral or foreign to the case or which would tend to distract attention which should be concentrated on vital issues of the

case. *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83; *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473. We must conclude, however, that in this instance the discretion of the trial court was improperly exercised when it excluded the defendant's offer of proof by an expert witness concerning the defendant's mental deficiencies and subnormal intelligence as they would affect the weight and credibility which the jury should accord to his confession, which was the most significant and damaging evidence against him.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.