STATE OF CONNECTICUT *v.* ROGELIO FERNANDEZ
(9825)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued December 5, 1991—decision released March 17, 1992

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49[1] and 53a-54a (a),[2] two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1)[3] and

---

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).[4] The jury found the defendant not guilty of an additional count of attempted murder. In summary, the defendant claims that the trial court (1) improperly refused to admit certain evidence regarding whether he had made an alleged custodial statement and the circumstances surrounding his statement, if any, (2) incorrectly instructed the jury regarding the use of circumstantial evidence, (3) incorrectly instructed the jury regarding the defense of intoxication, (4) improperly instructed the jury regarding evidence of flight, (5) incorrectly instructed the jury regarding the particular inferences supported by evidence of flight, (6) improperly permitted the jury to return inconsistent guilty verdicts on the counts of attempted murder and assault in the first degree and (7) improperly imposed separate punishments for attempted murder and assault in the first degree. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. The defendant lived with Denise Cardona and her son, George Morales, for a period of four to five years prior to August 31, 1989. In an incident that occurred prior to August 31, 1989, the defendant struck Cardona and held her at knife point after the two became embroiled in argument. As a result of this incident, Cardona and Morales went to live at Cardona's mother's house, leaving the defendant in the apartment they shared. When the defendant requested Cardona to return, she ordered him to move out of the apartment. After the defendant vacated the apartment,

---

[4] General Statutes § 53a-101 (a) provides in pertinent part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

Cardona and Morales returned and changed the apartment's locks in an attempt to prevent him from reentering it.

Cardona went to bed at about 8:30 p.m. on August 31, 1989. After awakening to the sound of someone breaking into the apartment through the back door, she left her bed and entered the apartment hallway, where she encountered the defendant. Upon seeing the defendant, she ran out the front door of the apartment and down a stairway that led to the front door of the building. As Cardona was descending the stairway, the defendant caught her, grabbed her hair and threw her down the remaining stairs. The defendant then continued to the bottom of the stairway, pulled out a knife and stabbed Cardona in the stomach, chest and hands.

After he awakened that night to the sound of moaning, Morales observed that Cardona was not in her bed. He then noticed that the door leading into the apartment was open and ran to the doorway. He looked toward the foot of the stairway and observed the defendant attacking his mother. Morales ran, then jumped, down the stairway and struck the defendant, who responded by stabbing him in the chest. As Morales attempted to pull his mother away from the defendant, the defendant stabbed her in the mouth. Morales continued to drag the screaming Cardona upstairs while warding off the advancing defendant. Suddenly, the defendant ceased the attack and fled. That evening, a neighbor heard her dog barking and went to her doorway, where she observed the defendant running past her house holding something in his hand.

After the attack, Cardona and Morales were transported to Bridgeport Hospital and admitted for treatment. Cardona was treated for multiple stab wounds and underwent surgery to alleviate a blood accumula-

tion in one of her lungs. Morales was treated for a collapsed left lung and a stab wound to the chest.

Early in the morning of September 1, 1989, Sergeant Richard Petitte and two other officers of the Bridgeport police department, acting on information received from two fellow police officers, went to a house on Noble Avenue in Bridgeport to search for the defendant. Petitte was admitted to the third floor apartment, where he found the defendant hiding in a bedroom closet. Petitte then arrested the defendant and took him to the police station for processing.

## I

The defendant first claims that the trial court deprived him of his federal and state constitutional rights to present a defense and committed evidentiary error when it prevented him from eliciting certain evidence regarding whether he had made a custodial statement and the context in which the statement, if any, was made.[5] We disagree.

The following additional facts are necessary to resolve these issues. Jack Messina, a Bridgeport police officer who participated in processing the defendant at the police station, testified on direct examination by the state that during the booking procedure the defendant, addressing himself to no one in particular, spontaneously asked "How are they doing?" Messina further testified that after someone responded with "something to the effect that they are going to make it, that they are doing okay," the defendant sarcastically replied, "Next time I'll do better." Messina conceded on cross-examination that he did not know what was said imme-

---

[5] Because the defendant has not analyzed any of his state constitutional claims separately from their federal counterparts, we shall consider only his federal constitutional claims. *State* v. *McMurray,* 217 Conn. 243, 248 n.6, 585 A.2d 677 (1991).

diately before this exchange because he had left the area momentarily and had returned just as the statement was made.

Virgillio Rosario testified during the defendant's case-in-chief that he had been arrested on August 31, 1989, in connection with an unrelated incident and taken to the Bridgeport police station. Rosario further testified that while inside the police station, he heard the defendant ask someone "How are they doing?", but did not hear the defendant say, "Next time I'll do better."

The defendant attempted to elicit testimony from Rosario regarding the contents of a conversation that the defendant allegedly had with him. Rosario indicated, in an offer of proof outside the jury's presence, that the defendant told him that he did not cut the alleged victims and that "the man" cut his finger. After hearing argument, the court sustained the state's hearsay objection to Rosario's testimony.

The defendant contends that the trial court, by sustaining the state's objection, deprived him of his constitutional right to present a defense. A defendant's fundamental right to present a defense, guaranteed by the due process clause of the fourteenth amendment to the United States constitution, includes the right to present evidence of the circumstances under which a custodial statement was made. *Crane* v. *Kentucky,* 476 U.S. 683, 690–91, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). Because the right to present a defense is rooted in the due process principle of fundamental fairness, constitutional concerns are most prominent where the proffered evidence significantly illuminates the "physical or psychological environment that yielded the confession"; id., 689; or otherwise bears on the confession's reliability. Id. The right to present a defense is not, however, absolute. Rather, the Supreme Court has

never questioned the power of the states to exclude evidence that is " 'repetitive . . . only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679, [106 S. Ct. 1431, 89 L. Ed. 2d 674] (1986)." *Crane* v. *Kentucky,* supra, 689–90. "Whether a trial court's erroneous restriction of a defendant's or defense witness's testimony in a criminal trial deprives a defendant of his due process right to present a defense is a question that must be resolved on a case by case basis." *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988).

The defendant claims that Rosario's testimony that the defendant denied attacking the victims and expressed concern for them was relevant to show that the defendant did not make the alleged custodial statement, "Next time I'll do better," or, alternatively, that he was not speaking sincerely when he made the custodial statement. The defendant claims that his statements to Rosario did not constitute hearsay because they concerned the circumstances under which the comments to Messina were made, and thus were offered to show his state of mind and not for their truth. The defendant's statements to Rosario would have tended to support his contentions that he did not state, "Next time I'll do better" or was not speaking sincerely when he stated it only if the statements to Rosario were true. Neither a false declaration of concern for the victims nor a false denial of guilt would have tended to support the defendant's claim that the apparent admission of guilt was in fact not made or was merely an insincere comment. He thus was attempting to introduce the statements to Rosario for their truth.

Although the defendant's alleged statements to Rosario, if true, would tend to cast doubt on the sincerity of his alleged statement, "Next time I'll do better," our courts consistently have recognized that such

self serving declarations are inherently unreliable. " '[T]o allow [the defendant] to make declarations in support of his cause and then to give those declarations in evidence would, in effect . . . allow him to make evidence in his favor at his pleasure.' B. Holden & J. Daly, [Connecticut Evidence (1988)] § 100; see *State* v. *Swift,* 57 Conn. 496, 506, 18 A. 664 (1889). A party would never want for testimony if he could so easily manufacture it. *Watson* v. *Osborne,* 8 Conn. 363, 368 (1831)." *State* v. *Brown,* 22 Conn. App. 521, 524, 577 A.2d 1120, cert. denied, 216 Conn. 825, 582 A.2d 204 (1990); compare *State* v. *Sharpe,* 195 Conn. 651, 666, 491 A.2d 345 (1985) (hearsay testimony admissible where it contains sufficient indicia of reliability and is necessary to resolve the case). Because the proffered testimony was relevant only if true, and its truth was inherently suspect, the testimony was not sufficiently probative of the reliability of the defendant's alleged statement, "Next time I'll do better," to implicate his constitutional right to present a defense. The defendant's constitutional right to present a defense was not compromised by the trial court's exclusion of the testimony.

The defendant's evidentiary claim relating to the same testimony is based on *State* v. *Vaughn,* 171 Conn. 454, 370 A.2d 1002 (1976), and substantially mirrors his constitutional claim. In *Vaughn,* our Supreme Court held, as a matter of state law, that because the defendant's confession was the most damaging evidence against him, he was entitled to present a psychologist's testimony that he was mentally deficient for the purpose of showing that his confession was unreliable. Unlike the psychologist's testimony in *Vaughn,* Rosario's proffered testimony was not sufficiently probative of the reliability of the defendant's purported statements to require the court to admit it.

We also reject the defendant's contention that the trial court violated his constitutional right to present a defense when it refused to allow him to ask Messina whether Messina knew that he was taking the defendant's statement out of context. Messina testified that he "had no idea" whether the defendant was talking to himself when he made the statement, that the defendant was not talking to Messina when he said it, that the conversation took place after he "had gone for a while and . . . came back" and that he had no idea what happened or what was said by anyone prior to the defendant's statement. Thus, the defendant clearly placed Messina's knowledge of the context of the defendant's statement into issue. Because the trial court's ruling did not deprive the defendant of an opportunity to present this aspect of his defense fully and effectively, it did not constitute a violation of his right to present a defense. See *State* v. *Lucci*, 25 Conn. App. 334, 342, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991) (right to fair trial does not require the admission of cumulative evidence).

The defendant's first claim is without merit.

## II

The defendant next asserts that the trial court deprived him of his federal and state constitutional rights to due process of law when it refused to charge, as requested, that when considering circumstantial evidence relied on by the defense, the jurors should ask themselves whether such evidence suggests a reasonable doubt rather than applying the standards applicable to circumstantial evidence relied on by the state.[6]

---

[6] The defendant filed the following request to charge regarding the use of circumstantial evidence offered by him: "Mr. Fernandez's evidence need only be sufficient to create a reasonable doubt. Hence, when assessing circumstantial evidence offered by the defense, you see if it creates a reasonable doubt. When assessing circumstantial evidence offered by the state, you must see if the basic fact has been proven beyond a reasonable doubt

He specifically claims that the trial court's instructions improperly implied that the defendant carried a burden of proving facts he established by circumstantial evidence. We are not persuaded.

Because the defendant does not claim that the trial court suggested to the jury that the state's burden of proof is something less than beyond a reasonable doubt, "[o]ur task in reviewing the defendant's claims is . . . to examine the court's circumstantial evidence instruction in the context of the charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991); see *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989). Our review of the charge as a whole discloses no reasonable possibility that the trial court's charge regarding the use of circumstantial evidence misled the jury.

The court properly instructed the jury that "[t]he accused does not have to prove that he did not commit the offense. The state must prove that he did." The court further stated that, in attempting to meet its burden of proof, the state was entitled to rely on circumstantial evidence. While the state must prove those subordinate facts that are essential to proof of an element of a crime beyond a reasonable doubt, the court continued, the jury may draw those inferences that it finds reasonably established by the subordinate facts proved. The court stated that this burden of proof applied to all elements of the crime charged, including intent.

The trial court's instruction on circumstantial evidence was given in the context of its discussion of the state's burden of proof. At no point did the court indi-

and whether the inferred fact has also been proven beyond a reasonable doubt. However, I repeat, do not apply that rule to circumstantial evidence offered by the defense."

cate that these principles applied to defense evidence, or that the defendant bore any burden of proof. In the absence of a fair indication to the contrary, we presume that the jury properly followed the trial court's instructions. *State* v. *Ortiz,* supra, 669. Because the instructions accurately stated the law, there is no reasonable possibility that they misled the jury. See *State* v. *Falcon,* 26 Conn. App. 259, 275, 600 A.2d 1364 (1991).

Furthermore, the instruction requested by the defendant could have saddled the jury with the very misconception that he ostensibly seeks to avoid. The defendant requested the court to instruct the jury that the defendant's evidence "need only be sufficient to *create* a reasonable doubt. Hence, when assessing circumstantial evidence offered by the defense, you see if it *creates* a reasonable doubt." (Emphasis added.) See footnote 6, supra. An instruction that the jury should determine whether the defendant has created a reasonable doubt carries with it a substantial and totally unjustifiable risk of diluting the constitutional requirement that the burden of proving the defendant guilty rests squarely on the state and that the defendant bears no burden of proving himself innocent. See *State* v. *Ortiz,* supra, 668–69.

The trial court properly declined to instruct the jury in accordance with the defendant's request to charge regarding circumstantial evidence relied on by him.

## III

The defendant asserts that the trial court's charge regarding the defense of intoxication misled the jury and deprived him of his federal and state constitutional rights to due process of law and an adequately instructed jury. The defendant specifically claims that the trial court improperly instructed the jurors that (1) they had to find intoxication as a fact before considering the effect of intoxication on the defendant's

mental state, (2) intoxication is a defense only if it rendered the defendant unable to form the requisite intent, and (3) evidence of intoxication is irrelevant to whether the defendant acted recklessly.

## A

At trial, the defendant introduced evidence that he was under the influence of alcohol and cocaine at the time of the offense. He claims that the trial court, in its charge, improperly required the jury to find intoxication as a fact before considering what effect, if any, the intoxication had on the defendant's ability to form the requisite intent. The defendant claims that this instruction, by requiring the defendant to establish that he was intoxicated, partially relieved the state of its burden of proving that he possessed the requisite intent beyond a reasonable doubt. We do not agree.

"Our perusal of the charge as a whole discloses that . . . it is not reasonably possible that the jury was misled as to the scope of the state's burden of proof on the element of specific intent. Initially, we note that the court informed the jury that the defendant was not required to prove his innocence, and throughout its charge repeatedly emphasized that it was the state's burden to prove his specific intent beyond a reasonable doubt. Although repeated references to the presumption of innocence and the state's burden of proof, alone, might be insufficient in a particular case to dispel the possibility of juror misinterpretation; see *Sandstrom* v. *Montana,* 442 U.S. 510, 518 n.7, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Stankowski,* 184 Conn. 121, 152, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); see also *State* v. *Fuller,* 199 Conn. 273, 280, 506 A.2d 556 (1986); the court in this case did not confine its charge to an explication of general principles of law. Rather than leaving the jury to its own devices in assessing the role of

intoxication in the case, the court provided the jury with an accurate and comprehensive explanation of the relationship between the state's burden of proving the element of specific intent and the defendant's evidence of his intoxication. See *State* v. *Rollinson,* [203 Conn. 641, 665, 526 A.2d 1283 (1987)]; compare *State* v. *Fuller,* supra.

"The court prefaced its instruction on intoxication with a reminder to the jury that the defendant had presented testimony to the effect that he had been intoxicated at the time of the crime . . ."; *State* v. *Ortiz,* supra, 662–63; and instructed the jurors that they were to consider this evidence in determining whether the state satisfied its burden of proving that the defendant possessed the requisite specific intent beyond a reasonable doubt. "The court then recited the statutory definition of the word 'intoxication'; see General Statutes § 53a-7; as well as the statutory explanation of the role of intoxication and the relevance of evidence thereof in a prosecution for a specific intent offense: 'Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . .' General Statutes § 53a-7; see *State* v. *Stevenson,* [198 Conn. 560, 570, 504 A.2d 1029 (1986)]. Immediately thereafter, the court carefully described how the statute applied in the context of this case and in connection with the defendant's evidence of his intoxication: 'If you find that the defendant was intoxicated at the time of the crime, you may take this fact into consideration in determining whether he was in such a state of intoxication as to be incapable of forming the required specific intent which is a necessary element for the commission of the crime . . . . Any intoxication, not merely total intoxication, may be considered in determining whether the defendant possessed the

requisite intent.' The court reinforced this concept in the minds of the jury by rephrasing and restating it: 'If you find that the defendant was under the influence of an intoxicant at the time of the alleged act, you must then determine what effect, if any, this [degree of] intoxication had on his ability to form this specific intent required to commit the alleged crime.' " *State* v. *Ortiz,* supra, 663–64.

The trial court never suggested to the jury that it could not consider the evidence of intoxication unless it surpassed an unlawful evidentiary threshold, and correctly charged that the evidence of intoxication should be considered in conjunction with all of the other evidence bearing on the issue of intent. Indeed, the charge tracked one approved by our Supreme Court in *State* v. *Ortiz,* supra, nearly verbatim. See also *State* v. *Williams,* 25 Conn. App. 456, 458–60, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991). As a result, the defendant cannot prevail on this claim.

## B

The defendant next claims that the trial court improperly instructed the jury that evidence of intoxication was irrelevant unless it rendered him incapable of forming the requisite intent, rather than instructing them, in accordance with his request to charge, that evidence of intoxication need not preclude the possibility that he possessed the requisite intent. The defendant asserts that this instruction impermissibly (1) thrust the burden of proving intoxication on him and (2) relieved the state of its burden of proving that he possessed the requisite mental state beyond a reasonable doubt. We disagree.

The defendant filed a request to charge regarding the defense of intoxication which read in pertinent part as follows: "[T]here is no requirement nor should you impose one which requires the level of intoxication to

be so extreme as to exclude the possibility of the defendant from having the required intent." The trial court instructed the jury as follows: "You must first decide whether the defendant was intoxicated at the time of the alleged crime and, second, whether his mind was so obscured that it was incapable of possessing [the requisite intent]." It further instructed the jury "[a]ny intoxication, not merely total intoxication, may be considered in determining whether the defendant possessed the requisite intent."

" 'A request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested instruction is given in substance.' " *State* v. *Jennings*, 216 Conn. 647, 663, 583 A.2d 915 (1990). Moreover, "[a] charge to the jury is not to be clinically dissected nor are portions of the charge to be read in isolation from the entire instruction." *State* v. *Toczko*, 23 Conn. App. 502, 507, 582 A.2d 769 (1990). By instructing the jury that "any intoxication" was relevant to whether the state had sustained its burden of proving that he possessed the requisite intent, the court made clear that the evidence of intoxication need not preclude the possibility of his possession of that intent. Thus, the trial court's instruction incorporated the substance of the defendant's request to charge. Moreover, the instruction has been described as a "correct . . . statement of law" by our Supreme Court. *State* v. *Stevenson*, supra. As a result, there was no reasonable possibility that it misled the jury. See *State* v. *Toczko*, supra.

Moreover, in light of the trial court's instructions as a whole, we find no reasonable possibility that the jury was misled into believing that the state did not have the burden of proving, despite the evidence of intoxi-

cation, that the defendant possessed the requisite intent beyond a reasonable doubt.

## C

The defendant next asserts that the trial court improperly instructed the jurors not to consider evidence of intoxication in deciding whether the defendant acted recklessly, rather than instructing them, in accordance with the defendant's request to charge, that evidence of intoxication was relevant to negate proof of recklessness. We disagree.

The trial court instructed the jury that it was to consider the evidence of intoxication with respect to each of the crimes charged that required proof of a specific intent. See General Statutes § 53a-7. It also instructed the jury not to consider any lesser included offenses until it first had resolved the greater offense. In instructing the jury regarding the lesser included offense of assault in the second degree; see General Statutes § 53a-60 (a) (3);[7] the court stated "the statute does not require a specific intent. The gist of this crime is recklessness. You, therefore, will not consider any intoxication of the defendant in your consideration *of this particular crime.*" (Emphasis added.)

General Statutes § 53a-3 (13) provides in pertinent part: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." General Statutes § 53a-7 provides in pertinent part that "when recklessness . . . is an element of the crime charged, if the actor, due to self-induced intoxication,

---

[7] General Statutes § 53a-60 provides in pertinent part: "(a) A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial." The trial court accurately instructed the jury, in accordance with this clear statutory directive, not to consider evidence of intoxication in assessing whether the defendant acted recklessly. See *State* v. *Shine,* 193 Conn. 632, 642, 479 A.2d 218 (1984) (evidence of intoxication not admissible to dispute recklessness).

This claim is without merit.

## IV

The defendant raises a number of challenges regarding the trial court's jury instructions on evidence of flight. He first claims that the trial court should not have instructed the jury regarding evidence of flight.[8] The defendant urges us to hold, contrary to established Supreme Court precedent, that no jury instruction specifically detailing the inferences to be drawn from evidence of flight or concealment should be given because the subject is more appropriately reserved for the arguments of counsel.

The rule in Connecticut is clear: The defendant's flight, when considered together with all the facts of the case, may justify an inference of the accused's guilt. *State* v. *Rosa,* 170 Conn. 417, 433, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116

---

[8] The trial court instructed the jury regarding evidence of flight as follows: "The law of our state generally recognizes a principle known as admission by conduct or consciousness of guilt. Therefore, the conduct of the accused in fleeing the scene of an incident may be considered in assessing his guilt or innocence since it tends to prove a consciousness of guilt. Now flight for concealment by the accused after a crime has been committed does not create a presumption of guilt. You may consider evidence of unexplained flight or concealment by the accused in connection with all of the other evidence in the case and give it such weight as in your sound judgment it is fairly entitled to receive."

(1976). It does not, however, raise a presumption of guilt. Trial courts are justified, in appropriate cases, in instructing the jury regarding the inferences to be drawn from evidence of flight. Id.; *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986). We must and do follow that rule.

The defendant further claims that the court unfairly commented on the evidence when it specifically noted that unexplained flight tends to prove consciousness of guilt, while failing to mention permissible inferences consistent with innocence. We disagree.

In addition to stating that flight may be considered as evidence of consciousness of guilt, the trial court correctly explained that the jury should consider such evidence "in light of all the evidence of the case and give it such weight as in [its] sound judgment it [was] entitled to receive." See *State* v. *Nemeth*, 182 Conn. 403, 408, 438 A.2d 120 (1980). Thus, the court clearly stated that consciousness of guilt was but one permissible inference to be drawn from the evidence of flight. "The court was not required to enumerate all the possible innocent explanations offered by the defendant. The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous." *State* v. *Wright,* supra.

We decline the defendant's invitation to depart from the well established Connecticut rule permitting the trial court to instruct the jury that unexplained evidence of flight may, in light of all the evidence in the case, give rise to an inference that the defendant was conscious of his guilt.

The defendant next asserts that the trial court misled the jury and deprived him of his federal and state constitutional rights to due process of law and an adequately instructed jury when it refused to charge, as

requested, that in deciding whether flight indicated a consciousness of guilt, the jury should consider whether there were other explanations for the defendant's flight, that consciousness of guilt did not necessarily reflect actual guilt and that the defendant bore no burden of proof. We disagree.

Our review of the entire charge discloses that the trial court adequately instructed the jurors that the weight to be afforded evidence of flight and the inferences to be drawn therefrom were to be determined by them and that they were not required to infer that flight was evidence of guilt. It is not reasonably possible that the jury was misled regarding this issue. See State v. Ortiz, supra, 667.

Additionally, the trial court instructed and reinstructed the jury that the burden rested solely on the state to prove the defendant guilty beyond a reasonable doubt. It further stated that evidence of flight does not raise a presumption of guilt and that the jury was to assess evidence of flight in connection with all the evidence in the case. No reasonable possibility exists that the jury was led to believe that the defendant bore either a burden of proof or a burden of production regarding the issue of flight. See State v. Williams, supra, 459.

The defendant's claim pertaining to the trial court's refusal to charge the jury, as requested, regarding innocent explanations for the defendant's flight need not detain us long.[9] We have already decided this issue in

---

[9] The defendant requested the court to instruct the jury as follows: "Whether or not evidence of flight or concealment of evidence shows a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury. That is to say, that you may consider the evidence or dismiss it out of hand at your leisure. In your consideration of the evidence of flight and concealment you should consider that there may be reasons for this which are fully consistent with innocence. These may include fear of being apprehended, unwillingness to

a different context in part IV, supra, and repeating the discussion would serve no purpose. As we have stated, the trial court need not provide a laundry list of possible explanations for a defendant's flight. See *State* v. *Wright,* supra. Because the trial court's charge as a whole fairly and accurately presented the issues raised by the defendant's alleged flight and concealment, there is no reasonable possibility that injustice resulted. *State* v. *Toczko,* supra, 507. The defendant's claim is meritless.

V

The defendant's remaining claims involve challenges to his conviction of both attempted murder and assault in the first degree. The defendant first claims that the trial court violated his federal and state constitutional rights to due process of law by permitting the jury to return two guilty verdicts and rendering a judgment of conviction of both attempted murder and assault in the first degree, based on the same acts, because the offenses require mutually exclusive mental states. He also claims that the trial court deprived him of his federal and state constitutional rights to be free from double jeopardy when it imposed a separate sentence for each offense. We reject both claims.

The following facts are necessary to resolve the defendant's first claim. The defendant was charged, in a long form information, with, inter alia, attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1) based on acts allegedly committed against Cardona. Each is a spe-

confront the police, or reluctance to appear as a witness. Let me suggest also that a feeling of guilt does not necessarily reflect actual guilt. The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

cific intent crime. A conviction for attempted murder required the jury to find that the defendant intended to cause the victim's death, while a conviction for assault in the first degree, as charged, required the jury to find that the defendant intended to cause the victim serious physical injury. The trial court submitted both counts to the jurors and instructed them that they could find the defendant guilty of both offenses. The jury returned guilty verdicts on both.

The defendant claims that the trial court improperly permitted the jury to return guilty verdicts on both counts because the charges require proof of mutually exclusive mental states. Specifically, he argues, the intent to cause death is legally and logically inconsistent with the intent to cause serious physical injury when applied to the same act against the same victim. Therefore, he claims, the guilty verdicts on both counts run afoul of the prohibition against inconsistent guilty verdicts. See *State* v. *King,* 216 Conn. 585, 583 A.2d 896 (1990); *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985).

In *State* v. *King,* supra, 593, the defendant was charged with the crimes of attempted murder and assault in the first degree.[10] Both counts were predicated on the same act carried out against the same victim. Id. While the attempted murder charge required proof that the defendant intended to cause the victim's death, however, the assault charge, as set forth in the information,[11] required proof that the defendant recklessly created a risk of death to the victim. Id. The Supreme Court, noting that the statutory definitions

---

[10] In *State* v. *King,* 216 Conn. 585, 583 A.2d 896 (1990), the defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (3), which prohibits reckless conduct. The defendant in this case was charged with assault in the first degree in violation of § 53a-59 (a) (1), which prohibits intentional conduct.

[11] See footnote 10, supra.

of "intentionally" and "recklessly" are mutually exclusive, vacated the convictions of assault in the first degree and attempted murder and ordered a new trial on both counts. Id., 603–604.

Unlike the guilty verdicts in *State* v. *King,* supra, the verdicts of guilty of assault in the first degree and attempted murder in this case are not inconsistent because the jury was not required to find that the defendant possessed the two different mental states simultaneously with respect to his acts against Cardona. Specifically, the jury could reasonably have concluded that although the defendant commenced his attack on Cardona with an intent to cause her serious physical injury, this intent was transformed, in midattack, into an intent to cause Cardona's death. Because the jury was not required to find that the defendant possessed the relevant mental states simultaneously, its verdict was not logically inconsistent.

The defendant's final claim is that the trial court violated his constitutional right to be free from multiple punishments for the same offense when it rendered judgments of conviction of both attempted murder and assault in the first degree and imposed separate sentences for each offense.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: '[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.' The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *State* v. *Lonergan,* 213 Conn. 74, 78, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990). This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same

offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Anderson,* 212 Conn. 31, 35, 561 A.2d 897 (1989); *State* v. *John,* 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989)." *State* v. *Greco,* 216 Conn. 282, 289–90, 579 A.2d 84 (1990).

" 'The traditional test for determining whether two offenses are the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).' *State* v. *Chicano,* 216 Conn. 699, 706–707, 584 A.2d 425 (1990). Under the *Blockburger* test, 'a defendant may be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other.' *State* v. *Vass,* 191 Conn. 604, 615, 469 A.2d 767 (1983); see *State* v. *Greco,* [supra, 291]. We determine whether each crime contains an element not found in the other by examining only the relevant statute, the information and the bill of particulars, and not the evidence presented at trial. *State* v. *Greco,* supra." *State* v. *Tweedy,* 219 Conn. 489, 495, 594 A.2d 906 (1991); see also *State* v. *Mezrioui,* 26 Conn. App. 395, 403, 602 A.2d 29 (1992).

Our analysis does not end here, however. The *Blockburger* test is a rule of statutory construction rather than a conclusive presumption. *State* v. *Russell,* 25 Conn. App. 243, 251, 594 A.2d 1000, cert. denied, 220 Conn. 911, 597 A.2d 338 (1991). As such, "a presumption under *Blockburger* that there are two crimes which may warrant two punishments may be rebutted ' "by showing a clear legislative intent that the two statutes be treated as one for double jeopardy purposes." ' " *State* v. *Russell,* supra; see *State* v. *Gilchrist,* 24 Conn. App. 624, 628, 591 A.2d 131 (1991). "The language, structure and legislative history of a statute can provide evidence of this intent." *State* v. *Greco,* supra, 293.

The defendant does not dispute that the charges at issue arise out of the same incident. He also concedes that, as charged, attempted murder and assault in the first degree are separate offenses under the *Blockburger* test, because each contains an element that the other does not. In order to prove the defendant guilty of attempted murder, the state was obligated to establish that he engaged in intentional conduct constituting a substantial step toward intentionally causing the death of another person. *State* v. *Jacobowitz,* 182 Conn. 585, 592, 438 A.2d 792 (1981). No showing that the victim suffered an actual injury is required. *State* v. *Sharpe,* 195 Conn. 651, 655, 491 A.2d 345 (1985). In order to prove the defendant guilty of the crime of assault in the first degree, the state was required to establish that "the defendant actually caused serious physical injury to another person. No showing of intent to cause death is necessary." Id.

The defendant further concedes that this court, in *State* v. *Gilchrist,* supra, found no clear legislative intent to prohibit separate punishments for attempted murder and assault in the first degree. Nonetheless, he asks us to reconsider this conclusion in light of an analysis not offered to us in *Gilchrist.* The defendant in *Gilchrist* claimed that "because the acts that gave rise to the convictions were . . . incapable of division, the legislature could not have intended to authorize punishment for both an attempted offense and a completed offense arising from such acts." Id., 629. The court in *Gilchrist* found that particular argument unpersuasive. Id., 630.

In this case, the defendant offers an analysis of the legislature's intent based on the legislative history of the pertinent statutes. He argues that the legislative history of our assault statutes evinces an intent to assess criminal culpability in light of the harm suffered

by the victim, rather than the defendant's intent. He further contends that Connecticut's assault statutes are modeled after New York's, which "grade the seriousness of the offense by reference to the intent of the actor, the means used, the injury inflicted and the seriousness of the other risks created." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (1969), p. 36. In light of this history, the defendant concludes that the legislature did not intend to authorize punishment for both assault and attempted murder based on one act directed against a single victim. We remain unpersuaded.

As the comment of the commission to revise our penal code reveals, our legislature did not intend the victim's injuries to be the sole barometer of criminal culpability. Rather, the legislature recognized other factors, such as the actor's intent, as germane to the state's penological interest. Moreover, the defendant has offered an analysis of the legislative history of our assault statutes only. Because this legislative history pertains to the assault statutes, it does not illuminate our legislature's intent regarding the interplay between the assault statutes and the attempted murder statutes. Because we discern no clear legislative intent to prohibit separate punishments for attempted murder and assault in the first degree, we reject the defendant's double jeopardy claim.

The judgment is affirmed.

In this opinion the other judges concurred.