## In re YORK.

[Cite as *In re York* (2001), 142 Ohio App.3d 524.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77656.

Decided April 12, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *David Zimmerman,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* State Public Defender, *Jill E. Beeler, Thomas Kenneth Lee* and *Cynthia A. Yost,* Assistant State Public Defenders, for appellant.

MICHAEL J. CORRIGAN, Judge.

Defendant-appellant herein, Thomas York, appeals from his conviction on one count of murder with a gun specification and one count of carrying a concealed weapon in the Cuyahoga County Court of Common Pleas, Juvenile Division. The charges arose out of an incident, in which the appellant fatally shot a neighbor girl while engaging in horseplay with his father's gun. The appellant was thirteen years old at the time of the incident, and the victim, Tiffany Dunning, was ten years old.

On the morning of August 17, 1999, the appellant, while looking for socks, came across a gun in a drawer of his father's dresser. The appellant removed the gun and began to play with it along with his cousin Thiotis, age fifteen at the time. At some point the appellant pulled the trigger of the .25 caliber semiautomatic pistol while aiming it at Thiotis. The gun did not fire. After Thiotis became upset that the gun was being pointed at him and the trigger pulled, the appellant reassured Thiotis that the gun could not fire because the safety mechanism was in the on position. The boys finished playing with the gun and put it back in the drawer where they found it.

At around 3:30 p.m., the appellant once again retrieved the gun to show to a neighborhood boy, Deontae Wilson, the brother of the victim. After showing the gun to Deontae, the appellant went to the backyard to talk to a group of neighborhood girls, including the victim, who apparently wanted to tell the appellant about another girl who she had learned had a crush on the appellant. The appellant had indicated to Deontae that he planned to scare the girls with a gun. While the appellant was talking to the girls, he pulled out the gun to show it to them. The girls wanted to know if the gun was real or not, as they claimed that it looked fake. In order to prove that the gun was real, the appellant passed it over the backyard fence for the girls to examine. Prior to passing the gun over

the fence for examination, the appellant showed the victim the removed clip and the safety mechanism. According to the appellant's testimony, when the victim was handed the gun she managed to pinch her finger by the slide in the well of the receiver while attempting to pull the slide back. It is unclear from the record how many others of the three remaining girls who were hanging out with the victim handled or touched the gun before it was handed back to the appellant, although they each observed the victim and the appellant talking and the appellant showing the gun to the victim. Each of the witnesses who observed the interaction between the appellant and the victim testified that the two seemed to be having a pleasant enough conversation, that there was no apparent animosity between them, and that the victim did not say anything of a nature to provoke the appellant.

As the victim handed the gun over the fence and back to the appellant, barrel first, the appellant grabbed the gun by the handle and trigger. Thereafter, as he was lowering the gun, the gun fired, striking the victim in the upper back. The bullet traveled from back to front right to left, and minimally downward as it entered the victim's back. None of the other girls saw the appellant pull the trigger, but each heard the gunshot and turned to see the appellant holding the gun in his hand, still pointed at the victim. At this point the appellant yelled "s* * *" and ran into his house, throwing the gun into some bushes along the way. When police responded to the scene, they found the appellant hiding in his bed with the covers pulled up over his head. Thiotis, who was in the front yard at the time of the shooting, testified that the appellant told him, as he was running into the house, that he had accidentally shot the girl.

A complaint was filed in juvenile court on August 18, 1999, alleging that the appellant was delinquent for murder with a gun specification in violation of R.C. 2903.02 and 2941.145 and for carrying a concealed weapon in violation of R.C. 2923.12. A trial, which continued for three days, commenced on December 15, 1999. At the conclusion of the trial, the trial court found the appellant delinquent for murder with a gun specification and for carrying a concealed weapon, but continued the matter for disposition for the purpose of ordering that a psychological examination of the appellant be completed.

The results of the psychological exam showed that the appellant had an IQ of 64, read at a third-grade level, and displayed an attitude and perception of himself typical of someone much younger than his thirteen years. On January 20, 2000, the trial court sentenced the appellant to eight years in the custody of the Ohio Department of Youth Services, or until he attained the age of twenty-one. It is from this finding of guilt and the sentence imposed by the trial court that the appellant now appeals.

The appellant assigns four assignments of error for this court's review. The appellant's first two assignments of error are interrelated and have a common basis in law and fact and, accordingly, will be addressed concurrently in this court's opinion. The first two assignments of error state:

"I. The trial court violated Thomas York's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article One, Section Sixteen of the Ohio Constitution, and Juv.R. 29(E)(4) when it adjudicated him delinquent of murder absent proof of every element of the charge against him by sufficient, competent, and credible evidence.

"II. The trial court violated Thomas York's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article One, Section Sixteen of the Ohio Constitution when it adjudicated him delinquent of murder, when that finding was against the manifest weight of the evidence."

In these assignments of error the appellant argues both that there was not sufficient evidence to support his conviction and that the conviction was against the manifest weight of the evidence. The crux of both of these arguments is that there was no evidence introduced at trial by which a finder of fact could conclude that the appellant "purposely" caused the death of the victim, as R.C. 2903.02(A) requires.

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court reexamined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *State v. Jenks, supra,* paragraph two of the syllabus.

A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence that goes to all the essential elements of the case. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236.

■ Section 3(B)(3), Article IV of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and to determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." *State ex rel. Squire v. Cleveland* (1948), 150 Ohio St. 303, 345, 38 O.O. 161, 177, 82 N.E.2d 709, 729.

The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, *i.e.*, invocation of the Double Jeopardy Clause as a bar to relitigation. *Id.* at 43, 102 S.Ct. at 2218–2219, 72 L.Ed.2d at 662.

■ Upon application of the standards enunciated in *Tibbs*, the court in *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The *Martin* court stated:

"There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

■ Moreover, the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Hence, we must accord due deference to those determinations made by the trier of fact.

The Supreme Court recently stated in *State v. Treesh* (2001), 90 Ohio St.3d 460, 484–485, 739 N.E.2d 749, 774–775:

"A person acts purposely when he or she specifically intends to cause a certain result. R.C. 2901.22(A). Because the intent of an accused dwells in his or her mind and can never be proved by the direct testimony of a third person, it must be gathered from the surrounding facts and circumstances, and the General Assembly has provided that intent to kill may be proven by inference. Former

R.C. 2903.01(D), 139 Ohio Laws, Part I, 3–4. See, also, *In re Washington* (1998), 81 Ohio St.3d 337, 340, 691 N.E.2d 285, 287. 'Such an intent may be inferred in a felony-murder when the offense and the manner of its commission would be likely to produce death.' *State v. Garner,* 74 Ohio St.3d [49] at 60, 656 N.E.2d [623] at 634."

■ Our review of the record compels the conclusion that the state failed to produce sufficient evidence that could give rise to a permissible inference of purposefulness on the part of the appellant in the death of Tiffany Dunning. Rather, all of the evidence introduced at trial was more consistent with a finding that the appellant did not act purposefully in discharging the weapon.

In reaching our conclusion we are persuaded by various evidence that leads to the opinion that this case involved a tragic shooting. The fact that the autopsy showed that the bullet was following a "minimally downward" path prior to striking the victim's heart is consistent with the appellant's testimony that he was in the process of lowering the gun, albeit with his finger on the trigger, at the time that it discharged. Several witnesses testified that the appellant appeared extremely surprised and disturbed by the firing of the handgun. Throughout the investigation the appellant consistently maintained that the shooting had not been intentional and that he did not know that a round was chambered at the time that the gun went off. Indeed, the appellant had pulled the trigger of the gun while it was pointed at his cousin earlier in the day without consequence. There was no evidence that the appellant ever intentionally disengaged the safety lock on the gun, although we know that it was engaged earlier in the day when the appellant and Thiotis were playing with the gun. No investigating officer ever offered any direct or inferential evidence that the shooting was purposeful. Finally, the most important factor underlying our decision is the utter lack of animus or motive on the part of the appellant against the victim. By all accounts the victim and the appellant were friends and were acting in a friendly manner towards each other right up until the moment that the weapon was discharged. There is similarly no evidence of provocation of the appellant by the victim that might explain why the appellant would purposefully fire a handgun at her from point blank range while her back was turned. Thus, we sustain this assignment of error to the extent that there was insufficient evidence adduced at trial to support the verdict of delinquent for murder.

■ Yet our analysis does not stop here given that the facts, although inadequate to support a murder conviction, are of such a nature as to make it appropriate that we remand to the lower court and direct the entry of judgment

on the lesser included offense of involuntary manslaughter, under R.C. 2903.21.[1] See *State v. Levingston* (1995), 106 Ohio App.3d 433, 440, 666 N.E.2d 312, 316; *United States v. Hunt* (C.A.5, 1997), 129 F.3d 739, 745; see, also, *Rutledge v. United States* (1996), 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419; *United States v. Lamartina* (C.A.6, 1978), 584 F.2d 764. Because there was no jury in this case, we need not address the issue of whether a lack of a jury instruction on the lesser included offense prevents us from remanding for entry of judgment and resentencing on the lesser included offense.

The circumstances that justify remand to the trial court for sentencing on a lesser included offense have been outlined as follows: "It must be clear (1) that the evidence adduced at trial fails to support one or more elements of the crime of which the appellant was convicted, (2) that such evidence sufficiently sustains all the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused." *Allison v. United States* (C.A.D.C. 1969), 409 F.2d 445, 451. The United States Supreme Court specifically recognized the four-part test propounded by the D.C. Circuit Court in *Allison* in *Rutledge, supra,* 517 U.S. at 306, 116 S.Ct. at 1250, 134 L.Ed.2d at 431–432, fn. 15.

In *Shields v. Mississippi* (1998), 722 So.2d 584, 585–586, the Mississippi Supreme Court surveyed the jurisprudence of a number of other state and federal jurisdictions in regard to what it termed the "direct remand rule":

"In a series of cases, this Court has stated that when the jury convicts of a greater offense, which is invalidated on appeal for want of sufficiency of the evidence, no new trial is required and the defendant may be remanded for sentencing upon the lesser included offense where the proof establishes proof of the lesser offense. * * *

"The direct remand rule has also been followed in numerous other state and federal courts, with varying rationales, either statutory, rule based or inherent power. See *State v. Cummings,* 229 Mich.App. 151, 161, 580 N.W.2d 480, 485 [1998 WL 151244], at *11 (Mich.Ct.App.1998) ('Where a trial court improperly fails to include an instruction on a lesser included offense, the remedy is to remand for entry of a conviction on the lesser included offense and for resentencing, or, if the prosecution desires, for retrial on the charge for which the defendant was convicted.'); *State v. Robinson,* 517 N.W.2d 336, 340 (Minn.1994); *State v. Arlt,* 9 Haw.App. 263, 833 P.2d 902, 909 (Haw.Ct.App.1992) ('Under the

---

1. Although the facts of this case may also be consistent with a finding of guilt on negligent homicide, we are precluded from directing that that judgment be entered by the lower court on negligent homicide because it is not a lesser included offense of murder. See *State v. Koss* (1990), 49 Ohio St.3d 213, 219, 551 N.E.2d 970, 975–976; *State v. Jenkins* (1983), 13 Ohio App.3d 122, 13 OBR 141, 468 N.E.2d 387

modern practice prevailing in most jurisdictions, the appellate courts have the power, in a proper case, to modify rather than reverse a judgment, where such action seems appropriate') (quoting 5 Am.Jur.2d Appeal and Error §§ 937 and 938); *State v. Bay,* 567 So.2d 798, 799 (La.Ct.App.1990) ('However, when it is clear from the verdict that the trial judge or jury necessarily found the elements of a lesser and included offense had been proved beyond a reasonable doubt, and the state, constrained by the double jeopardy clause, cannot seek anew a conviction on the greater offense, a remand for a new trial would serve no useful purpose.') (quoting *State v. Byrd,* 385 So.2d 248, 252 (La.1980)); *Davidson v. State,* 305 Ark. 592, 810 S.W.2d 327, 329 (Ark.1991) ('Under appropriate facts we will modify a conviction from the greater offense to the lesser included offense and either fix punishment ourselves or remand the case to the trial court for the assessment of punishment.') (citing *Trotter v. State,* 290 Ark. 269, 719 S.W.2d 268 (Ark.1986)); *State v. Edwards,* 201 Conn. 125, 513 A.2d 669, 675 n. 6 (Conn.1986) ('The jury's verdict on the second count necessarily determined that the state had proven all the elements of accessory to robbery in the third degree beyond a reasonable doubt upon which the trial court instructed the jury. Under the circumstances of this case, the reduction of the defendant's conviction on the second count to the lesser included offense cannot prejudice the defendant.') (citations omitted); *State v. Eiseman,* 461 A.2d 369, 384 (R.I.1983) (' "State and federal appellate court's have long exercised the power to reverse a conviction while at the same time ordering the entry of judgment on a lesser-included offense." This court has never availed itself of the opportunity to adopt this practice, but we shall implement it in this case.') (quoting *Dickenson v. Israel,* 482 F.Supp. 1223, 1225 (E.D.Wis.1980)); *Searcy v. State,* 163 Ga.App. 528, 295 S.E.2d 227, 229 (Ga.Ct.App.1982); *State v. Boone,* 307 N.C. 198, 297 S.E.2d 585 (N.C. 1982) disapproved of on other grounds by *State v. Richmond,* 347 N.C. 412, 495 S.E.2d 677 (N.C.1998)." See, also, *Ex parte Edwards* (Ala.1984), 452 So.2d 508, 509–510; *State v. Falcon* (1991), 26 Conn.App. 259, 265–269, 600 A.2d 1364, 1368–1369.

The clear majority of jurisdictions that have addressed this issue have allowed appellate court modification to a lesser included offense where there is insufficient evidence to sustain the greater offense but sufficient evidence for a conviction of a lesser included offense. Shellenberger, The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies (1995), 79 Marq.L.Rev. 1. Many courts have relied on state constitutional, statutory, or rule authority to sustain the modification remedy, sometimes interpreting the common legislative authorization to "reverse, affirm, or modify" as covering modification to a lesser included offense. *Id.*

. "Involuntary manslaughter" is defined in part as causing the death of another as a proximate result of the offender's committing or attempting to commit a felony or misdemeanor. R.C. 2903.04(A). The appellant admits that he caused the death of the victim. The relevant question for the purposes of our inquiry becomes whether he caused the death during the commission of a felony or misdemeanor.

R.C. 2903.21 prohibits aggravated menacing. The statute makes it illegal to "knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person." "If the victim of a threat is not in fact intimidated, the offender's conduct would constitute attempted menacing if his purpose was to intimidate or he knew that his conduct would probably intimidate." 1973 Legislative Service Commission Comment to R.C. 2903.21. The relevant *mens rea* under R.C. 2903.21 is "knowingly," as opposed to "purposefully." R.C. 2901.22 defines both purposefully and knowingly as follows:

"(A) a person acts purposefully when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Thus, even though we do not believe that the appellant acted purposefully so as to fall under the ambit of the murder statute, R.C. 2903.02, we do believe that he acted knowingly and can therefore be found delinquent for involuntary manslaughter under the aggravated menacing statute. The testimony at trial established that the appellant carried the gun to the backyard for the stated purpose of "scaring the girls." This conduct constitutes aggravated menacing, as the appellant's use of a firearm to scare the girls was clearly intended to cause apprehension of serious physical harm. It is not important for our purposes that we determine whether the girls were actually intimidated by the brandishing of the firearm, as the behavior would constitute attempted aggravated menacing even if the girls were not actually intimidated.

Hence, we find that the evidence adduced at trial supports a finding of delinquency for involuntary manslaughter arising out of the commission of aggravated menacing, but not for murder, and we remand for entry of judgment and for sentencing on the lesser included offense of involuntary manslaughter. Any resentencing shall automatically credit time served.

The appellant's third assignment of error states:

"III.  Thomas York was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions."

█  In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.  *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407.

█  In reviewing a claim of ineffective assistance of counsel, it *must* be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.  *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128;  *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164.

The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373:

" 'When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed.  First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.'  *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910 [98 S.Ct. 3135, 57 L.Ed.2d 1154].  This standard is essentially the same as the one enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674].  * * *

"Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction.  'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  Cf. *United States v. Morrison*, 449 U.S. 361, 364–365 [101 S.Ct. 665, 667–668, 66 L.Ed.2d 564, 567–569] (1981).'  *Strickland, supra*, [466 U.S.] at 691 [104 S.Ct. at 2066, 80 L.Ed.2d at 695–696].  To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  *Strickland, supra*, at 694 [104 S.Ct. at 2068, 80 L.Ed.2d at 697–698].  In adopting this standard, it is

important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *

"Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley, supra,* 42 Ohio St.3d at 141, 142–143, 538 N.E.2d at 379–380.

The appellant asserts in this assignment of error that he was prejudiced at trial by his counsel's failure to request a competency hearing and failure to retain a ballistics expert to examine the murder weapon.

R.C. 2945.37(A) provides:

"A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense."

■ R.C. 2945.37(A) governs competency evaluations of juveniles, as well as adults, so long as it is applied in light of juvenile rather than adult norms. *In re Williams* (1997), 116 Ohio App.3d 237, 242, 687 N.E.2d 507, 511.

■ The constitutional test under the Fourteenth Amendment for competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States* (1960), 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825.

■ There is no evidence in this case that the appellant was incapable of understanding the nature of the proceedings against him or that he was unable to assist in his defense. To the contrary the record shows that, despite his low IQ, the appellant fully understood the nature of the charges against him and ably assisted in his own defense. There is no indication that the appellant ever exhibited any behavior that would cause his counsel to believe that he was mentally infirm to such an extent that he could not assist in his own defense, and to therefore cause him to move the court for a competency examination.

The appellant's testimony clearly demonstrated that he understood that he was charged with purposefully causing the death of the victim and that he further understood the difference between purposefully shooting somebody with the intent to kill them and acting without purpose. The appellant consistently testified that he twice took the gun in question out of his father's sock drawer, that he understood the function of a gun, and that he did not intend to discharge

the gun towards the victim. The mere fact that a psychological test that was administered after the appellant was found delinquent showed that he had a low IQ and was anxious about being incarcerated is not enough to demonstrate that the appellant's trial attorney was deficient in his performance by not requesting a competency hearing. Thus, we are not convinced either that the appellant was not competent to stand trial or that the appellant received ineffective assistance of counsel at trial.

Our disposition of the first assignment of error renders moot the appellant's argument that his counsel's performance was deficient for failing to retain a gun expert.

This assignment of error is hereby overruled.

The appellant's fourth assignment of error states:

"IV.  The trial court committed reversible error by not conducting a competency hearing on Thomas York, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article One, Section Sixteen of the Ohio Constitution."

As we concluded in the prior assignment of error, the appellant demonstrated at trial that he was competent to effectively assist in his own defense and that he clearly understood the nature and ramifications of the charges against him. Thus, the trial court did not err in failing to *sua sponte* order that a competency hearing be conducted prior to trial. This assignment of error is overruled.

The judgment is affirmed as modified, and the cause is remanded for resentencing.

*Judgment modified*
*and cause remanded.*

ROCCO, P.J., and JAMES D. SWEENEY, J., concur.