OPINION
Appellant Tiffany Morton, a juvenile, appeals the decision of the Belmont County Court of Common Pleas, Juvenile Division, adjudicating her a delinquent child due to her assault on another juvenile. Appellant contends that the adjudication was against the manifest weight of the evidence. For the following reasons, the adjudication is affirmed.
In the evening of February 2, 2001, Appellant, who was fifteen years old at the time, was involved in a fight with Ms. Kathleen Rice ("Rice") in the parking lot of the Ohio Valley Mall in St. Clairsville, Belmont County, Ohio. A delinquency complaint was filed against Appellant on February 15, 2001. Appellant was charged with delinquency for committing assault in violation of R.C. § 2903.13(A), a first degree misdemeanor if committed by an adult.
The case went to trial on May 10, 2001. Appellee presented the testimony of the victim and four other juveniles who accompanied the victim to the mall and who witnessed the assault. Appellant, who was represented by counsel, testified in her own defense. Appellant included as part of her defense the testimony of two more juveniles who also witnessed the assault.
Four of Appellee's five witnesses testified that Rice approached Appellant in the parking lot and tapped Appellant on the shoulder. They said that Appellant turned around and punched and kicked Rice. (5/10/01 Tr. 7, 28, 62, 72). Only one of Appellee's witnesses testified that he was not sure who started the fight. (Tr. 51-52).
Rice testified that she approached Appellant in the parking lot to tell Appellant to leave her boyfriend alone. (Tr. 13). Rice testified that she tapped Appellant on the shoulder to talk to her. (Tr. 15). She stated that the two of them began arguing and that, during the argument, Appellant hit her. (Tr. 13). Rice testified that after Appellant hit her twice in the nose, Rice began to fight back. (Tr. 7, 10). She contended that a friend of Appellant's jumped on top of her and held her down while Appellant kicked her. (Tr. 7). Rice stated that her nose was broken in two places and that she received two black eyes as a result of the assault. (Tr. 8).
There was contradictory testimony as to the events which led up the fight. Appellant and Rice's erstwhile boyfriend both testified that Rice previously said that she was going to "beat up" Appellant. (Tr. 81, 127). Appellant testified that Rice once called her on the phone and threatened to have a fight with her because of her relationship with the boyfriend. (Tr. 126-127). Appellant and two of her friends all testified that Rice and Appellant had an encounter in or near the bathrooms at a movie theater on February 2, 2001, during which Rice threatened Appellant. (Tr. 35-37, 90, 130). Other witnesses testified that there was no such encounter. (Tr. 15, 77).
Appellant testified that while she was standing at the movie ticket counter on February 2, 2001, she heard Rice say that she was going to beat her up. (Tr. 128).
Appellant further testified that Rice confronted her in the parking lot, grabbed her shoulder, spun her around and said, "how she wanted to fight me because I had been talking to her boyfriend." (Tr. 132). Appellant testified that it was Rice who threw the first punch, hitting Appellant in the corner of her eye. (Tr. 133). Two of the other juveniles also testified that it was Rice who threw the first punch. (Tr. 94, 110).
On May 17, 2001, the trial court filed its adjudication decision. The court found Appellant "guilty." We interpret this to mean that the juvenile was "adjudicated delinquent." A dispositional hearing was set for July 10, 2001. The dispositional order was filed on July 17, 2001. The trial court ordered Appellant to be committed to the Belmont County Juvenile District for ninety days, with all ninety days suspended. Appellant was also ordered to pay restitution and to have no contact with the victim.
Appellant filed this appeal almost two months before the filing of a dispositional order. "[A] delinquency adjudication without a disposition is not a final appealable order." In re Sekulich (1981), 65 Ohio St.2d 13,14. Although this appeal was premature, the dispositional order has been made part of the record, and the notice of appeal will be treated as if it were filed immediately after the filing of the dispositional order. See App.R. 4(C).
On December 3, 2001, Appellant filed her brief on appeal. Appellee has not filed a brief. This should be an accelerated appeal pursuant to App.R. 11.2(D).
Appellant's sole assignment of error asserts:
 "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that the state did not produce evidence showing beyond a reasonable doubt that she committed an assault. Appellant argues that the weight of the evidence shows that Rice instigated the fight and threw the first punch. Appellant asserts that she was justified in defending herself. Appellant relies primarily on her own testimony, along with that of the boyfriend, to support her argument. Appellant also contends that she adequately proved the affirmative defense of self-defense and that the delinquency charges should, therefore, have been dismissed. Appellant's arguments are not persuasive.
Juvenile delinquency proceedings, although not criminal proceedings per se, have many of the same attributes as criminal prosecutions. In reGault (1967), 387 U.S. 136; In re Miami Cty. Grand Jury Directive toCreager (1992), 82 Ohio App.3d 269, 274. For example, an adjudication of juvenile delinquency must be supported by proof beyond a reasonable doubt, just as in criminal cases. See Juv.R. 29(E)(4). In criminal proceedings, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Johnson (1991), 58 Ohio St.3d 40, 41; State v. Eskridge
(1988), 38 Ohio St.3d 56, paragraph two of the syllabus. Appellate courts apply this same standard of review to juvenile delinquency proceedings. Inre York (2001), 142 Ohio App.3d 524, 529.
In determining whether a delinquency adjudication is against the manifest weight of the evidence, an appellate court must, "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice." In re Michael (1997),119 Ohio App.3d 112, 132, citing State v. Martin (1983),20 Ohio App.3d 172, 175; see also State v. Thompkins (1997),78 Ohio St.3d 380, 387.
When a reviewing court reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thompkins, supra,
at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 45. The discretionary power of a court of appeals to reverse the judgment and order a new trial, "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins,supra, at 387, quoting Martin, supra, at 175.
Although the reviewing court is permitted to weigh the evidence as part of this review, due deference must be given to the decision of the trier of fact, which retains the primary responsibility of determining the weight and credibility of the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus; In re York, supra, at 530. The role of a reviewing court in this situation is, "to examine whether the evidence produced at trial `attains the high degree of probative force and certainty required,'" of a juvenile delinquency adjudication. See State v. Tibbetts (2001), 92 Ohio St.3d 146, 163, quoting State v. Getsy (1998), 84 Ohio St.3d 180, 193.
Appellant's manifest weight argument is not directed at the trial court's conclusion that an assault occurred. Appellant fully acknowledges that the fight took place. Appellant's argument in this appeal is that her evidence more than adequately proved that Rice initiated the assault and that Appellant only acted in self-defense. Appellant also seems to argue that, even if the trial court believed that she threw the first punch, Rice sufficiently provoked her into doing so, which should satisfy the essential elements of self-defense.
Self-defense is an affirmative defense and must be proven by a preponderance of the evidence. R.C. § 2901.05(A); State v. Williford
(1990), 49 Ohio St.3d 247, 249. Self-defense has three elements: 1) the defendant must not have been at fault in creating the violent situation; 2) the defendant must have had a bona fide belief that she was in imminent danger of death or great bodily harm and that the only means of escape was the use of force; and 3) the defendant must not have violated any duty to retreat or avoid the danger. State v. Thomas (1997),77 Ohio St.3d 323, 326; see also Williford at 249; State v. Melchior
(1978), 56 Ohio St.2d 15, 20-21.
A defendant's belief that danger is imminent has both an objective and subjective element. Thomas, supra, at 330-331. The trier of fact must conclude both that the belief was objectively reasonable under the circumstances, and that the defendant herself subjectively and honestly believed that danger was imminent. Id.
"One may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend." State v. Fox
(1987), 36 Ohio App.3d 78, 79, citing State v. McLeod (1948),82 Ohio App. 155, 159. Self-defense is not available, "if the force is so grossly disproportionate to her apparent danger as to show revenge or an evil purpose to injure her assailant * * *." State v. Weston (July 16, 1999), Washington App. No. 97CA31.
A defendant need not fear death or great bodily harm in order to use non-deadly force in self-defense. Fox at 80. "[E]ven when faced with less than impending death or great physical harm, one may use reasonable force in order to protect oneself." Id. In other words, a, "defendant is justified in using some force in self-defense when he reasonably believes that such conduct is necessary to defend [herself] * * * against the imminent use of unlawful force and if the force used was not likely to cause death or great bodily harm." Columbus v. Dawson (1986),33 Ohio App.3d 141, 142; see 4 Ohio Jury Instructions (1996) 75, Section 411.31(4).
The aggressor or instigator of a fight cannot normally rely on a self-defense argument unless the aggressor has withdrawn from the fight and informs the other party of her withdrawal. State v. Davis (1982),8 Ohio App.3d 205, 208.
There is no duty to retreat before using non-deadly force in self-defense. Dawson, supra, at paragraph two of syllabus.
Appellant acknowledges that her evidence, which consisted primarily of her own testimony and that of Rice's boyfriend was contradicted by various witnesses. The record reveals two versions of the fight, and the trial court was left to choose between them. It is axiomatic that the trier of fact, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co.,Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80. The trial court may simply have believed that Appellant was the aggressor, or that one or more of the elements of self-defense were not established. In particular, the trial court may have viewed Appellant's act of kicking Rice as unreasonable and disproportionate to the circumstances. See Statev. Nichols (Jan. 22, 2002), Scioto App. No. 01CA2775 (self-defense not applicable where defendant kicked victim in the head after a barroom brawl).
In addition, the record reflects that the trial court did not find Rice's actions constituted sufficient provocation to support Appellant's self-defense theory. The trial court stated: "[t]he Court finds that provocation is a mitigating factor, not a defense." This is a slight misstatement of the law. All self-defense arguments are, to some degree, based on a defendant's reaction to the provocative acts of another person. In some contexts, certain types of provocation may not constitute a complete defense to a crime but may mitigate the charge to a lesser offense, e.g., murder may be mitigated to voluntary manslaughter. Statev. Benge (1996), 75 Ohio St.3d 136, 140. Nevertheless, it appears the trial court was using the vernacular and not any term of art to find that Rice's behavior was not sufficiently provocative for Appellant's response.
The record shows that Rice may have made a number of verbal threats directed at Appellant. As a general rule, provocative words and threats, by themselves, cannot justify an assault. State v. Napier (1995),105 Ohio App.3d 713, 723; State v. Harris (June 22, 2000), Franklin App. No. 99AP-1087; State v. Woodruff (Dec. 31, 1997), Lake App. No. 96-L-111. This Court itself has recently held, in a case involving a simple assault, "[c]oncerning appellant's claim that [the victim] had threatened him, it has been recognized that mere verbal harassment does not constitute provocation entitling a defendant to defend himself."State v. Badurik (Dec. 17, 1999), Mahoning App. No. 98 C.A. 106, citingBucyrus v. Fawley (1988), 50 Ohio App.3d 25.
It is possible to interpret the record as Appellant suggests. Rice herself testified that she approached Appellant in the parking lot and touched Appellant's shoulder from behind. (Tr. 15). Appellant testified that Rice grabbed her and spun her around. (Tr. 132). As earlier discussed, there was testimony that Rice repeatedly threatened to harm Appellant prior to the actual fight. If the trial court viewed all these facts in Appellant's favor, it could have held that Appellant's actions constituted self-defense, even if Appellant struck first.
Ultimately, though, Appellant's self-defense theory depends upon the credibility of her and her witnesses' testimony, and it is readily apparent from the record that the trial court found Appellee's witnesses more credible.
In conclusion, the record contains substantial evidence supporting the decision of the trial court. It contains evidence supporting a conclusion that Appellant initiated an assault and that there was very little provocation for this assault other than for verbal harassment. It is also clear that Appellant could not rely on a self-defense argument because her act of kicking Rice was disproportionate to the threat posed by Rice. The trial court's slight misstatement of the law of self-defense does not rise to the level of manifest injustice required for this Court to reverse the decision as being against the manifest weight of the evidence. We overrule Appellant's sole assignment of error and affirm the trial court adjudication of delinquency and subsequent dispositional order.
Donofrio, J., concurs.
Vukovich, P.J., concurs.